## NATIONAL BUILDING ASSOCIATION *v.* QUIN.

1. The answer of the defendant was not subject to demurrer upon the ground that it attempted " to set up the plea of usury and [contained] no allegation of fact which, if proved, would take the contract sued on out of that class of contracts of building associations recognized by the law as not being usurious."

2. Declarations of an agent as to business transacted by him, in order to be admissible against his principal, must have been made by him while representing the principal in the transaction in controversy, and must also have been a part of the negotiation, and constituting the res gestæ.

3. Evidence that a letter was written to a given person does not authorize a presumption that he received it, unless the evidence also shows that such letter was properly addressed, duly stamped, and mailed.

4. It is erroneous to admit in evidence, over proper objection by the party against whom it is offered, an advertisement published in a newspaper by a person, while acting as his agent in a matter to which it is claimed such advertisement referred, when it appears that such person made the publication in his individual capacity, and there is no evidence to show that the party against whom it is offered authorized the publication, or, by subsequent ratification, adopted it as his own.

Argued May 18, — Decided June 9, 1904.

Complaint.   Before Judge Toombs.   City court of Washington. September 23, 1903.

*W. A. Slaton,* for plaintiff, cited, as to usury: *Ga. Rep.* 46/166; 63/373; 79/439; 94/562-3; 96/206, 803; 104/814; 107/624; 119/941; Civil Code, §§ 2398–2401; 7 Thomp. Corp. § 8700. Admissions of agent: Wood's Prac. Ev. § 171; 1 Enc. Ev. 540; *Ga. Rep.* 29/461; 53/635; 85/482; 117/466; Civil Code, §§ 3023–26; 9 Peters, 689; 119 U. S. 99.

*Colley & Sims* and *S. H. Hardeman*, for defendant, cited *Ga. Rep.* 46/166–192; 96/803; 104/823; 1 Am. & Eng. Enc. L. 1071–3; Id. 691 et seq.; 2 Whart. Ev. 1170, 1177; *Ga. Rep.* 70/87; 74/208; 76/639; 77/202; Tiffany on ·Agency, 249–52; 117 Mass. 177.

FISH, P. J. There was a demurrer to the answer filed by the defendant, which demurrer was overruled by the court; and the first question to be decided is whether the court erred in this ruling. The suit was apparently one by a building and loan association against one of its borrowing members and stockholders, for the recovery of the amount due to the association by such member and stockholder upon an advance made by it to her upon her stock, and for the establishment, in the judgment, of a special lien upon described land which had been conveyed by the debtor to the creditor as security for the debt. The answer of the defendant set up the defense of usury, under which she sought both to reduce the amount of the plaintiff's claim and to invalidate the security deed. The demurrer was: "that said answer is not sufficient in law; for that it attempts to set up the plea of usury and contains no allegation of fact which, if proved, would take the contract sued on out of that class of contracts of building associations recognized by the law as not being usurious." Taking the allegations of the plaintiff's petition to be true, the case would fall within the well-settled rule in this State, that the ordinary contract between a legitimate building and loan association and one of its borrowing members and stockholders is not usurious, although the borrower may therein obligate himself to pay more for the use of the money advanced upon his stock than interest thereon at the highest rate which the law authorizes in other contracts. But these allegations, except as to the giving of the bond sued on and the execution and delivery of the security deed, were expressly denied by the defendant. All that she admitted was "that said bond and written instrument sued on were given by her as alleged in the petition," and she immediately explained and limited this admission, by alleging that "they were given as security of said loan of $1,800.00 and six per cent. interest," and that, "under the contract between her and plaintiff, she was a mere borrower and not in any wise a stockholder in said plaintiff company;" that the plaintiff "approached her, before said loan was made, with the dis-

tinct proposition to loan her the said $1800.00, stating that it did not wish any stock subscriptions or to obtain any stockholder, but merely [desired] to loan its money, of which it had an abundance to loan;" "that the money would not bear exceeding six and one half per cent. per annum, and that their method of doing business was adopted merely as a convenient way of loaning and securing its money;" that she "was assured by the plaintiff that the intention of both parties, which was to act merely in the relation of lender and borrower, would be accomplished by the execution of the papers she signed, and that she was borrowing the money at the rate of six and one half per cent. as aforesaid." She further alleged, "that plaintiff adopted this method of doing business, not bona fide as a legitimate building and loan association, but merely as a device to evade the laws of Georgia in regard to usury and in fraud of [her] rights, and that the "whole business of plaintiff's company was on the line of this transaction with defendant, and its sole purpose in doing business in this State was to lend money at usurious rates of interest." The answer denied the allegation of the petition, that, at the time the contract was entered into, the defendant was a member of the alleged building and loan association; denied the allegation that, while a member of such association, she applied for and obtained an advance on stock which she owned therein; and, after making these denials, admitted the giving of the bond set out in the plaintiff's petition, but qualified and restricted this admission as above indicated, so that it did not conflict with these denials, but amounted simply to an admission that she did execute and deliver the written instruments to the plaintiff, but did so merely for the purpose of borrowing money from the plaintiff, which had adopted this method of making loans in order to evade the laws of this State against usury.

If the understanding between the parties, prior to and at the time that the contract was entered into, was that the defendant was not to become a stockholder in a building and loan association, but the relation of the parties was to be merely that of lender and borrower, and in this transaction the plaintiff adopted the mere forms of a building and loan association's "method of doing business, not bona fide as a legitimate building and loan association, but merely as a device to evade the laws of Georgia in regard to usury," certainly these facts would take the contract between the

parties "out of that class of contracts of building and loan associations recognized by the law as not being usurious." The question raised by the demurrer was, not whether the contract alleged in the plaintiff's petition was usurious, but whether the contract alleged in the defendant's answer was usurious. The contract set forth in the petition was one thing, and the contract alleged in the answer was another. The one was apparently a legitimate building and loan association contract; the other was simply a contract for the loan of money at usurious interest, masquerading in the habiliments of a building and loan contract, for the purpose of concealing its real usurious character. Whatever else may be said of the defendant's answer, it was not subject to this demurrer. The demurrer was evidently based on the ruling of this court in *Goodrich* v. *Atlanta National Building & Loan Association,* 96 *Ga.* 803, which is cited by counsel for defendant in error in its support. In that case it was held that " The pleas alleging usury, and which were stricken, on motion, by the court, containing no averments of fact which take the present out of that class of cases in which, according to the rulings of this court, contracts purely mutual between the members of building and loan associations, where each member takes an interest in the several contributions to a general fund, are held to be not usurious, were therefore properly stricken." While the answer of the defendant in that case did allege that "the scheme by which she borrowed the money was a scheme to evade the usury laws of this State, and the contract usurious," it set up no facts to show that the actual contract between the parties was otherwise than as the plaintiff alleged. The defendant there did not deny that the plaintiff was a legitimate building and loan association, nor deny that she was, when the contract sued on was entered into, a member and stockholder of such association, nor did she deny that the contract sued on was the one which she made with the plaintiff. So, there were no averments of fact in reference to the contract, or the relations of the parties, to take the case out of the established rule with reference to building and loan contracts. As we have seen, the demurrer in the present case simply presented the question whether, if the defendant proved all that she alleged, the plea of usury would be sustained. We are clearly of opinion that the plaintiff could not admit all the allegations of the answer as to the relations

of the parties when the contract was entered into and their mutual understanding and intention in reference thereto, and still maintain the action for the full amount sued for and a special lien on the land alleged to have been conveyed to secure the payment of the debt. The court did not err in overruling this demurrer.

2. Three of the grounds of the motion for a new trial may be considered together, as the same considerations will dispose of each of them. O. M. Smith, a witness for the defendant, testified, in part, as follows: "Mr. J. M. Anderson was the State agent of the plaintiff. When he first came to Washington, he approached me to act as agent for the National Building Association. I declined to talk to him about it. I told him that our people had been so badly hit by building associations that he could get no subscribers to the stock of such associations here. He said he did not wish to get subscribers to such stock, but all they wanted was borrowers. Said the company had a great deal of money to loan; had fifty thousand dollars to place in Washington, Ga. At first I refused to consider his proposition, but he afterwards talked to Mr. R. H. Wooten and came back to me, and after he explained it to me I accepted the position. Mr. Anderson told me the interest on the money advanced by the company would amount to about 6% in advance, making an interest rate of not more than 6 1/4%. Upon this I took the local agency, and advertised the lending of money at 6 1/2% as shown by this advertisement." The plaintiff moved to rule out this testimony, because no authority had been shown in Anderson to bind the plaintiff by the admission contained in such conversations, and because the testimony showed that this was not a part of the res gestæ of the transaction between the plaintiff and the defendant. This motion was overruled by the court, and, in the motion for a new trial, error was assigned upon this ruling. H. P. Quin, a witness for the defendant, was asked by defendant's counsel: "Did you ever have a conversation with J. M. Anderson with reference to this matter between Mrs. Quin and the association?" He answered: "I had a conversation with Mr. J. M. Anderson about a year after this contract was made. He told me that the primary object of the association was to lend money, and that Mrs. Quin would be settled with at the rate of 6 1/2%, and that she would be allowed that rate of interest on all that she had paid in to the association." The plaintiff objected to

this testimony, upon the grounds, that no authority had been shown in Anderson to bind the association; that parol evidence was not admissible to alter or contradict a written contract; and because the evidence was not a part of the res gestæ. The court overruled this objection, and complaint was made in the motion for a new trial of this ruling. Subsequently the plaintiff moved to rule out this testimony, upon the same grounds, and the overruling of this motion is one of the grounds upon which a new trial was asked. Neither the declarations of Anderson made in his conversations with Smith, nor his declarations in the conversation with Quin, were a part of the res gestæ of the transaction involved in this case. Anderson did not represent the plaintiff in any negotiation with the defendant. His declarations to Smith did not even relate to the contract in controversy, but to an entirely different transaction, between different parties. His declarations to Quin were made long after the contract between the plaintiff and the defendant was entered into, and, besides, were not the declarations of an agent of the plaintiff who represented it in the negotiation with the defendant. Declarations, or admissions, of an agent as to business transacted by him are not admissible against his principal, unless they were part of the negotiation, and constitute the res gestæ, or the agent be dead. Civil Code, § 3034; *Griffin* v. *Montgomery & West Point R. Co.*, 26 *Ga.* 111; *Evans* v. *Atlanta Ry. Co.*, 56 *Ga.* 498; *Chattanooga R. Co.* v. *Liddell*, 85 *Ga.* 482; *Hematite Mining Co.* v. *East Tenn. Ry. Co.*, 92 *Ga.* 268; *Southern Ry. Co.* v. *Kinchen*, 103 *Ga.* 186; *Southern Ry. Co.* v. *Allison*, 115 *Ga.* 635. The declarations of an agent, in order to be admissible against his principal, must relate to the identical transaction in controversy. Dorne *v.* Southwork, 11 Cush. (Mass.) 205; Barber *v.* Bennett, 62 Vt. 50.

While Wharton lays down the rule that "A party who commits the management of his whole business, or a particular line of business, to an agent, is bound by the admissions of the agent, as to his entire business committed to him;" and that, "When the agent is a general agent representing his principal continuously," it is not "necessary for the admission of such declarations that they should either have been part of the res gestæ, or should have been authorized" (Whart. Ev. § 1177), the courts are by no means harmonious in holding such to be the rule. There is, however, no

necessity for us to consider this question in the present case; for clearly there was no evidence to show that the plaintiff had committed the management of its whole business to Anderson, or that it had committed any business whatever to him, save, perhaps, that of the selection and appointment of local agents in the State of Georgia. If he had any other power as "State agent," the evidence fails to disclose it. Indeed, all that it can be fairly said the evidence shows as to his authority is, that he had authority to select and appoint a local agent for the plaintiff for the city of Washington, Ga., and the only evidence of even this authority is that he induced Smith to accept such agency, and the plaintiff apparently ratified his act in so doing, by afterwards recognizing Smith as its local representative to a certain extent. It follows that the court erred in each of these rulings.

3, 4. Another ground of the motion for a new trial is, that the court erred in admitting, over the objection of the plaintiff, the following advertisement, printed in the Washington Gazette of December 8, 1899: "Money to loan on City Real Estate, 1 to 10 years, rate 6 per cent    O. M. Smith." , This was objected to on the grounds, that it was immaterial, that the advertisement appeared to have been published several months after the consummation of the contract sued on, and that no proof had been offered to connect the plaintiff with it. We think that the court erred in admitting this advertisement in evidence. It appeared upon its face to be simply the advertisement of O. M. Smith, and there was no evidence which showed that the plaintiff had any connection whatever with it. For this reason, if for no other, it was inadmissible. Counsel for the defendant in error contend that it was admissible because the defendant's husband testified that he saw the same advertisement in this paper before he, as agent for his wife, began with Smith the negotiations which resulted in the contract in controversy, and because Smith testified that he sent a copy of this advertisement to the building and loan association. While Smith did testify that he enclosed a copy of this advertisement in a letter which he wrote to the association about other matters, there was nothing to show that this letter was properly addressed, duly stamped, or mailed; and unless all this had appeared, no presumption of the receipt of the letter could have arisen. 22 Am. & Eng. Enc. L. 1255, and cases cited in notes.

Besides, even if we assume that the letter, with the enclosure, was received by the plaintiff association, there was no proof that Smith's letter to the association about other matters contained anything which required the plaintiff to either ratify or repudiate his act in publishing this notice, nor was there anything to show that the plaintiff did not repudiate it. Smith himself testified that it was his advertisement, and not that of the association, and certainly his mere enclosure of a copy of it in a letter which he wrote to the plaintiff, about other matters, without more, would not place the plaintiff in a position where it had to either ratify or repudiate the publication. There was no error in admitting, over the objection of the plaintiff, the itemized statements of account sent by the plaintiff to the defendant.

*Judgment reversed. All the Justices concur.*