## BANKERS MUTUAL CASUALTY COMPANY *v.* PEOPLES BANK OF TALBOTTON.

1. When a policy of insurance provides that "the assured may require the cancellation of the policy at any time," but does not prescribe the manner in which notice of cancellation must be given, before the cancellation becomes effective it must appear that notice of the cancellation was received by the company.
2. Evidence that a letter was written to a given person does not authorize the presumption that he received it, unless the evidence also shows that such letter was properly addressed, duly stamped, and deposited in the mail.

Submitted July 18, 1906.—Decided January 16, 1907.

Complaint. Before Judge Little. Talbot superior court. December 30, 1905.

*J. J. Bull*, for plaintiff. *Persons & McGehee*, for defendant.

CObb, P. J. This was a suit by an insurance company to recover premiums alleged to be due, the company being engaged in the business of insuring against loss by burglary. The defendant had applied for and obtained two policies, each for a term of five years. The premiums for the first year had been paid. The policies provided that they might be "cancelled at any time by written notice served upon the assured by a representative of the company or mailed to the assured at his address as hereinafter given." They also provided that the assured might "require the cancellation of the policy at any time," but did not provide any particular manner in which the notice of cancellation should be given. The defendant claims that it had given the notice to the company to cancel the policies at the expiration of the first year, and therefore that the company was not entitled to recover the premiums sued

for. Dooley, a witness for the defendant, testified, that he was cashier of the defendant bank, and that before the first year was out he notified the company to cancel the policies. The exact language of the witness was: "This notice was given in writing by me, as cashier of the defendant, and was deposited with the post-office at Talbotton, Ga., to be forwarded by the United States mail." This testimony referred to a policy in favor of the defendant on the Bank of Talbotton. Brown, a witness for the defendant, testified in reference to the policy on a branch bank at Chipley. He said: "Mr. Dooley wrote to the plaintiff to cancel the policy. . . I wrote to the plaintiff, on March 8, 1902, to cancel the policy also. I wrote as cashier, and the letter was properly addressed, and I mailed the letter." There being nothing in the policy prescribing the manner of the notice to be given by the assured to the company when the cancellation was desired, it was incumbent upon the assured to show that notice had been received before the cancellation could be claimed to be effective. The case, therefore, turns upon the question whether the evidence above referred to is sufficient to raise a presumption that the letters containing the notice of cancellation were received by the company.

In *National Building Asso.* v. *Quin*, 120 *Ga.* 358, it was held that evidence that a letter was written to a given person does not authorize the presumption that he received it, unless the evidence also shows that such letter was properly addressed, duly stamped, and mailed. See also 1 Greenl. Ev. 137, and note 2; 35 Albany Law Journal, 82; *Burch* v. *Americus Grocery Co.*, 125 *Ga.* 153(3). There are some authorities which hold that the word "mailed," when used in reference to sending matter through the mails of the United States, carries with it the presumption that the postage due on such matter has been paid. See Rolla State Bank v. Pezoldt, 69 S. W. 53(5); Words & Phrases, 4275; Pier v. Heinrichshoffen, 67 Mo. 169. But in the decision in *National Building Asso.* v. *Quin*, supra, that meaning does not seem to be given to the word "mailed," it being there used to describe the mere act of depositing a letter in the mails. In this sense there might be such a thing as the mailing of an unstamped letter. The presumption that a letter has been received when intrusted to the mail for delivery is a presumption arising from the regularity in the method of business adopted by the postal authorities. In order for this regular-

ity to take place, certain things must be done by the party depositing the matter for carriage in the mail; and therefore the presumption that a letter or parcel has reached its destination ought not to arise until it affirmatively appears that that which the postal authorities require to insure carriage and regularity has been done. The effect of the ruling in the case last referred to is that unless it appears affirmatively that a letter has been properly addressed, duly stamped, and deposited in the mail, no presumption of the receipt of the letter will arise. There was, in the present case, evidence from which a jury could find that at least one of the letters was properly addressed, and that both were deposited in the mail, but the evidence is silent as to whether they were duly stamped. Under such circumstances there was no presumption that the letters were received. On the other hand there was positive evidence that they were not received. The verdict was without evidence to support it, and a new trial should have been granted.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*