ABE JACOBS *v.* NATIONAL ACCIDENT & HEALTH INS. CO.

May Term, 1930.

Present: POWERS, C. J., SLACK, and MOULTON, JJ., and GRAHAM, Supr. J.

Opinion filed October 7, 1930.

*Wilson, Adams & Keyser* for the plaintiff.

*Fred B. Thomas* and *J. B. Boyer* (of Philadelphia) for the defendant.

POWERS, C. J.   The plaintiff held an accident policy in the defendant company, during the life of which he met with an accident which disabled him for several weeks.   His claim for indemnity having been rejected by the company, he brought this suit therefor.   At the close of the evidence below, a verdict was ordered for the defendant, and the plaintiff excepted.

One ground of the defendant's motion for a verdict was that there was no evidence that a notice of injury was given the company as required by the policy.   This ground was much relied upon by the court below, and inasmuch as it presents what seems to us to be a vital question, we give it first attention.

By the terms of the policy it was required that a written notice of injury should be given to the insurer within twenty days from the date of the accident and that such notice should contain particulars sufficient to identify the insured.   It was provided in the policy that such notice might be given to any authorized agent of the company, that upon receipt of such notice the company would furnish the claimant such forms as were usually furnished for filing proofs of loss, and that if such forms were not so furnished within fifteen days after the receipt of such notice, then written proof, submitted to the company within ninety days after the accident, covering the occurrence, character, and extent of the loss, should be sufficient.

It thus appears that the first duty imposed upon the plaintiff by the contract sued on was to give the written notice above specified.   Strict compliance with this provision of the policy is, in express terms, made a condition precedent to a recovery thereunder, and a failure therein forfeits, by such terms, all right to indemnity.

There is no evidence in the record that this notice was given.   The only letter that can possibly be relied upon by the plaintiff in this connection is the one written by Mrs. Huntington a few days after the accident.   All the others were more

than twenty days after the accident. In regard to this letter of Mrs. Huntington, there is no evidence, express or presumptive, that it ever reached the defendant's agent, Bean. All that appears is that such a letter was written. It is not shown that it ever found its way into the mails. It is to be remembered that it is the mailing of a letter that raises the so-called presumption that it was received by the addressee. We held in *Barnet* v. *Norton,* 90 Vt. 544, 550, 99 Atl. 238, that testimony that a notice was "mailed" implied that it was deposited in the post office properly stamped. But it would be going too far, we think, to say that evidence that a letter was "written" implies that it was deposited in the post office, properly stamped and addressed. It was held in *Uhlman* v. *A. & C. Brewing Co.* (C. C.), 53 Fed. 485, that the mailing of a letter will not be presumed from the fact that it was written. To the same effect are *National Building Association* v. *Quinn,* 120 Ga. 358, 47 S. E. 962; *Best* v. *German Ins. Co.,* 68 Mo. App. 598; *Bankers' Mutual Cas. Co.* v. *People's Bank,* 127 Ga. 326, 56 S. E. 429; and *Sills* v. *Burge,* 141 Mo. App. 148, 124 S. W. 605.

If Mrs. Huntington meant by her statement that the letter was not only written but mailed to the agent, that fact should have been brought out. To hold otherwise would be to sanction a practice altogether too loose in laying the predicate of the presumption referred to.

Nor does it affirmatively appear that this letter was sufficient in its content. It does not appear that it contained "particulars sufficient to identify the insured." The testimony of Mrs. Huntington was that she wrote Bean that "Dad had got hurt." But she does not say that she explained who "Dad" was, and for aught that appears, she was quoting literally from the letter. That this suggestion is not unreasonable appears from her letter of February 12, 1927, in which she refers to "my father," but does not give his name. It is true that the plaintiff testified that *he* wrote Bean that "I had got injured." But, as he admits, he referred to the letter that Mrs. Huntington wrote. So nothing on the point under discussion is added to her testimony. The defendant insists that the giving of this notice was, in law, a condition precedent to a right to a recovery on the policy. The plaintiff does not dispute this, but relies upon an alleged waiver on the part of the company to avoid the consequences of his failure in respect thereof. So our next

inquiry is, was there evidence before the jury tending to show such a waiver?

The letter of February 12, above referred to, advised the company that the person referred to as stated "has been sick and laid up about two weeks." On February 19, the company, understanding that reference was made to one Simon Jacobs, who was insured by policy No. 51302, replied to Mrs. Huntington, and after expressing regret that she did not give the number of her father's policy, and expressing the belief that they had located the proper person insured, declined to honor the claim on the ground that the policy had not been in force long enough to entitle the insured to sick benefits. On receipt of this letter and on February 25, Mrs. Huntington sent the company a letter which it duly received setting the latter right on the name of the claimant, and for the first time, so far as the evidence shows, gave his name as Abe Jacobs. In this letter, she says that "father is still sick and unable to do anything and under the care of doctors." The company replied to this letter on February 28, saying, among other things: "Upon referring to our records, we find the policy issued to Abe Jacobs is policy B-100009 which lapsed June 1, 1926, on account of non-payment of premiums. If he has receipts to show the annual premium due June 1, 1926, paid on that date, in advance, or proof to submit showing his policy was in force when he was taken ill, kindly forward same to us when we will give the matter such further attention as it merits. Kindly forward the receipt to us at once for our inspection, if he holds the receipt of an authorized agent of this company. This request is made without waiving our rights or defenses under the above captioned policy and we trust we will have your reply by return mail in order that the claim may be given the attention it merits." To this letter the plaintiff himself replied. He informed the company that he held a receipt dated May 29, 1926, signed by agent Bean, and gave a copy of the letter in which the receipt was enclosed to him. In this letter the plaintiff said: "I have been sick right along and I am sick in bed at this time." On or about March 27, the plaintiff received a reply to his letter in which the company asked for the exact cause of his disability, the date of its beginning and if he was then under a doctor's care.

Later on, after the plaintiff had employed counsel, some correspondence passed between such counsel and the company. It is apparent that as first advised, counsel understood that the policy was a sick benefit policy. The plaintiff was referred to as being sick, and the first proof of loss filed with the company was for sick benefits. When attention was called to the fact that the policy did not provide indemnity for sickness, final proofs for accidental injuries were filed.

It is the established law of this Court that the conditions of an insurance policy that are therein inserted for the benefit .of the insurer may be waived, and that the Court will deal generously with the insured in passing upon the question of the waiver of such conditions. But a waiver is the relinquishment of a known right. Ignorance of material facts will affect the insurer's conduct. So nothing said or done by this company while it understood that it was Simon Jacobs' policy that was involved can be taken against it. When this error was corrected by the letter above referred to, the company asserted that the policy had lapsed. This turned out to be a mistake, but there was nothing in the company's letter which amounted to a denial of payment, and the whole tenor of it is to the effect that the company realized that it might be mistaken about this. All this time, the plaintiff and his representatives were talking about sickness. Not a word had reached the defendant about an accident. The defendant's conduct is to be considered in the light of this fact. The policy here in question, unlike policies heretofore considered by this Court, comes within the provisions of G. L. 5630, and the defendant's silence regarding the want of notice, its furnishing blanks, its acceptance of proofs, or its asking for particulars, would not operate as a waiver. The statute so provides. No effect need be given to the reservations in the defendant's letters. The statute leaves it so that some affirmative act on the part of the assured beyond those specified therein, is required where the policy comes within it.

We hold, then, that there was nothing in the evidence warranting the submission of the question of waiver to the jury.

This holding disposes of the case. The questions of admissibility of evidence and the effect of the lack of the physician's certificates do not and could not affect the result.

*Judgment affirmed.*

MOULTON, J., concurs in the result.

MOULTON, J.   I concur in the result of this case, and in the treatment of each question save that concerning the testimony of the witness Mrs. Huntington to the effect that she wrote the defendant company that her father had been injured.

The majority are of opinion that from this testimony it cannot be inferred that the letter was mailed.   I would hold that the question is what the jury might reasonably understand to be the meaning of the witness.   Her testimony is not, I think, to be construed or interpreted by strict technical rules.   In common speech when one person says that he wrote a letter to another, he usually means, not only that he indited the letter, but that he mailed it.   And such would probably be the understanding of those who heard the statement.   So, here, I think that the jury might reasonably have so understood the witness, and that therefore it cannot be said that there was no evidence of the mailing of the letter in question.