### 46634. INTERNATIONAL SERVICE INSURANCE COMPANY v. CONSOLIDATED UNDERWRITERS et al.

JORDAN, Presiding Judge. International Service Insurance Company, an insurer providing uninsured motorist coverage for a number of claimants seeking to recover damages from George Jackson, Jr., in pending litigation, commenced this action against the litigants and Consolidated Underwriters to determine by declaratory judgment whether Consolidated Underwriters was Jackson's liability insurer on September 1, 1968, the date of the incident on which the tort litigation is based. The trial judge, sitting without a jury, determined that Jackson was not insured by Consolidated Underwriters after June 26, 1968, and entered judgment in favor of the defendants, from which the plaintiff appeals.

1. Under the evidence and stipulated facts the trial judge was authorized to determine that the correct total premium was $208, that the insured only paid $67 initially, that the insured failed to make any additional premium payments, although he had agreed to pay the balance in six monthly instalments commencing May 25, 1968, for the policy issued effective April 24, 1968, and that if coverage ceased after June 26, 1968, no unearned premium refund was due the insured. It is also clear that the trial judge was authorized to determine from the evidence that the insurer, in depositing for dispatch by first class mail on June 26, 1968, and in obtaining a receipt from the post office, a notice addressed to the insured at the only address of record, notifying him of the cancellation, effective June 26, 1968, for the stated reason of nonpayment of premium, had fully complied with the express provisions of the contract requiring notice by mailing "stating when not less than ten days thereafter such cancellation shall be effective" under conditions which also meet the requirements of *Code Ann.* § 56-2430. Significantly, neither the contract nor the law here involved requires any specific reason for cancel-

lation, although both require the return of any unearned premium, but not necessarily as a condition preceding cancellation. Moreover, although *Code Ann.* § 56-2430.1 (B) covering cancellation for failure to pay premiums is not applicable for the reason that the policy had been in effect less than 60 days at the time notice of cancellation was given, the notice as given by the insurer is in accord with these statutory requirements.

2. No error appears for any reason argued and insisted upon.

*Judgment affirmed. Bell, C. J., Hall, P. J., Eberhardt, Deen and Quillian, JJ., concur. Pannell and Evans, JJ., dissent. Clark, J., disqualified.*

Submitted October 6, 1971—Decided March 8, 1972— Rehearing denied March 24, 1972—

*Long, Weinberg, Ansley & Wheeler, John E. Talmadge,* for appellant.

*Savell, Williams, Cox & Angel, Edward L. Savell,* for appellees.

Evans, Judge, dissenting. The question at issue here is whether George Jackson, Jr. was an uninsured motorist on September 1, 1968, or whether on that date he was insured by Consolidated Underwriters. The majority opinion holds that he was an uninsured motorist, based on the contention that a liability insurance policy issued to Jackson by said insurer had been canceled by mail on the 26th day of June, 1968.

I dissent because there is no evidence in this record which authorized the trial judge to find that the policy had been canceled. It is contended by the majority opinion that a notice of cancellation was mailed from the home-office in Memphis, Tennessee; but not a single officer or employee of said home office in Memphis testified; the postmaster in Memphis did not testify; no agent of the post office in Memphis testified. George Jackson, Jr. testified that he did not receive a notice of cancellation. When an insured per-

son testifies that he did not receive a notice of cancellation, the inference is raised that *such notice was not mailed.* All-state Ins. Co. v. Buck, 96 Ga. App. 376 (100 SE2d 142); New Amsterdam Cas. Co. v. Russell, 102 Ga. App. 597 (2) (117 SE2d 239).

Thus, with an inference clearly raised in this case that no notice of cancellation was ever mailed, by what testimony or evidence did the insurer rebut or overcome this inference? Without the testimony of some person in Memphis, who knew it was mailed, the trial court could not make a legal finding that the notice was mailed. The insurer elected not to make witnesses of any person in Memphis. Then what testimony did it produce on this question? The only witness to testify for the insurer on this point was its local agent in Waynesboro, W. R. Hillis, who had sold the policy to Jackson, but, so far as the record discloses, was never in Memphis, and of course, had no first-hand knowledge of whether a notice was mailed by the insurer from the home office in Memphis, or not. Under the leading questions of the insurer's counsel, this witness testified as follows: (beginning at p. 87 of transcript) "Q. All right, sir, did anything transpire after April 24, 1968, with respect to this particular insurance transaction? A. No sir, I don't think so. Q. Were you ever notified, for example, that there was a cancellation of the policy? A. Yes, sir. Q. All right, sir, when did that occur? A. Here's the cancellation here. Q. You've handed me a document and I'll ask the reporter to mark that as P-7. [Later in record as P-7 and D-2; also deposition exhibit 3; at p. 139 of transcript.] And that is the notice of cancellation, Your Honor, Mr. Savell offered as his exhibit. It would be defendant's exhibit 1 in evidence. [actually D-2] The Court: I'd like to see it again. Mr. Talmadge: All right. Q. Now, Mr. Hillis, Exhibit P-7 is what? A. That is a notice of cancellation, issued to the Post Office Department by Ben O. Logue, Memphis, Tennessee. Q. Is this a copy or is this the original? A. I don't know. Q. It looks like a copy. A. It looks like a copy, sure. Q. And this came to you through the mail? A. Yes, sir. Q. All

right, sir, let me see that, please. Now on the back of P-7 there are some figures, that—do you know what those are? A. No sir, I don't, lots of times I've got a paper laying on my desk, and I figure on the back of anything, ain't no telling what that could represent." The above is the sum-total of the evidence the insurer offered to prove mailing of the notice of cancellation. This testimony could not possibly prove that a notice of cancellation was mailed to George Jackson, Jr. It simply showed that agent Hillis received an original or copy of a notice of cancellation, purportedly mailed from Memphis, Tennessee. Hillis did not know whether the document he received was an original or copy, but under the leading questions of the insurer's attorney finally said "it looks like a copy, sure." Hillis did not know of any act that was performed in Memphis, and any testimony that tended to suggest what was done there was the rankest kind of hearsay, and without probative value, though admitted without objection. *Jones v. State,* 50 Ga. App. 97 (1) (176 SE 896); *Burke v. State,* 54 Ga. App. 225 (1) (187 SE 614); *Rushin v. State,* 63 Ga. App. 646, 647 (11 SE2d 844); *Acme Fast Freight, Inc. v. Southern R. Co.,* 67 Ga. App. 885, 887 (21 SE2d 493); *Higgins v. Trentham,* 186 Ga. 264 (1) (197 SE 862); *Stow v. Hargrove,* 203 Ga. 735 (6) (48 SE2d 454); *Longstreet v. Longstreet,* 205 Ga. 255 (4) (53 SE2d 480). It was not at all important to the determination of the issue here to prove that a notice of cancellation was mailed to Agent Hillis in Waynesboro, Georgia; but it was all-important and necessary to the insurer's position to prove that a notice of cancellation was mailed to *George Jackson, Jr.* What witness so testified? What testimony can be found in the record—excluding hearsay testimony which is without probative value—to even raise an iota of an inference that a copy was mailed to George Jackson, Jr.? There is none—absolutely none.

The above is sufficient to dispose of this case, and to show that no proof was offered to show cancellation of the policy. But let us go a step further. Suppose some witness had come forward from Memphis and testified that the notice

.was mailed to George Jackson, Jr., such testimony could not have aided the insurer's position, unless it went further and showed the following: 1. The letter (notice) was written. 2. It was *properly* addressed. 3. It was *duly* stamped. 4. It was posted (or mailed). See *National Building Assn. v. Quin,* 120 Ga. 358 (3) (47 SE 962); *Rawleigh Medical Co. v. Burney,* 25 Ga. App. 20 (1) (102 SE 358); *Cheeves v. Ayers,* 43 Ga. App. 454, 455 (159 SE 299); *Canal Ins. Co. v. Tate,* 111 Ga. App. 377, 384 (141 SE2d 851). Even where the letter (or notice) is admitted without objection, absent proof of the above four essentials, it is insufficient to prove the mailing of the letter. In the case sub judice, no one testified that the letter was *properly* addressed, nor does Exhibit P-7 [D-2] (the purported copy of notice) show it; nor is it shown that it was *duly* stamped (meaning with proper postage affixed); nor was it proven that it was mailed to George Jackson, Jr., albeit the testimony of Agent Hillis was sufficient to show that the original or a copy was mailed to Hillis.

Next, the name and address of the insured is set forth in the upper left-hand corner of the policy, to wit: George Jackson, Jr., Co. E-7 BW 3Bg., Fort Gordon, Georgia. The policy provision as to cancellation provides that "this policy may be cancelled by the company by mailing to the *named insured at the address shown in this policy,* stating when, not less than ten days, etc. . ." But Exhibit P-7 [D-2] completely fails to show a compliance with this provision. While there was not sufficient evidence to show that anything was mailed from Memphis, because no witness so testified, conceding for the nonce that the notice was proven to have been mailed, it shows plainly that such mailing was to: George Jackson, and not to George Jackson, Jr. The cancellation provision of the policy provides that it must be mailed "to the named insured"—and that was not done. In the case of *New Amsterdam Cas. Co. v. Russell,* 102 Ga. App. 597, 600 (117 SE2d 239), it is held: "However, where an insurance company interposes the defense of cancellation of the policy, the company has the burden of proving strict

compliance with the cancellation provisions. . . Any ambiguities of the notice must be resolved in favor of the insured." Citing *Chambers v. Washington Nat. Ins. Co.,* 66 Ga. App. 509 (17 SE2d 899). Here the insurer well knew that George Jackson, Jr. was a "junior" and so listed his name and address in the policy—yet it deliberately ignored his correct name and contends it mailed the notice to some person named George Jackson (not George Jackson, Jr.). This ambiguity was of the insured's making, and it must be resolved against the company, thus proving that it did not mail notice of cancellation to the named insured at the address listed in the policy.

It has not been suggested that Exhibit P-7 [D-2] was admissible as a business record under *Code Ann.* § 38-711 (Ga. L. 1952, p. 177; 1958, pp. 542, 543), nor could it have been admitted in evidence under that statute. The statements thereon that some unidentified person or persons did certain things is nothing more or less than hearsay. In order to make proof by business records, it must be proven that same were made in the regular course of business, and that it was the regular course of business to make such record; *at the time of the act or transaction. Martin v. Baldwin,* 215 Ga. 293 (4) (110 SE2d 344). Of course, no such appears in the record in this case.

There is no statement whatever on Exhibit P-7 [D-2] to suggest that proper postage was placed on any mail referred to therein. We may assume enough postage was affixed to Hillis' copy (or original) because he testified that he received it. But Jackson swore that he did not receive notice, and the proof does not show proper postage, nor indeed, does it show any notice was even addressed or mailed to him, and we repeat that any statement on said Exhibit P-7 [D-2] as to what anyone did in Memphis, Tennessee, is but hearsay.

For all of the foregoing reasons, the insurance company failed to prove that it canceled the insurance policy issued to George Jackson, Jr., and he was therefore an insured— and not an "uninsured motorist"—on the date of the auto-

mobile mishap. I respectfully dissent from the majority in this case, and would reverse the trial court.

I am authorized to state that Judge Pannell joins me in this dissent.