**MOULTRIE INTERNATIONAL, INC.,**
Plaintiff-Appellee,

v.

**UNIVERSAL UNDERWRITERS
INSURANCE COMPANY,**
Defendant-Appellant.

No. 76–2860
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Jan. 17, 1977.

Rehearing and Rehearing En Banc
Denied Feb. 28, 1977.

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, et al.*, 5 Cir. 1970, 431 F.2d 409, Part I.

Hoyt H. Whelchel, Jr., Moultrie, Ga., Lokey & Bowden, Hamilton Lokey, Atlanta, Ga., for defendant-appellant.

C. Saxby Chambliss, Moultrie, Ga., for plaintiff-appellee.

Before COLEMAN, GOLDBERG and GEE, Circuit Judges.

GEE, Circuit Judge:

Moultrie International is a farm equipment and truck dealership in Moultrie, Georgia. Universal Underwriters Insurance Company had issued a stock floater policy which allowed Moultrie to report monthly changes in the value of parts and goods on hand. The value reporting clause allowed the insured thirty days after the last day of the month to report the value of covered property for the month just ended. Universal Underwriters adjusted the premiums according to the reported fluctuations in value, and the last reported value governed the amount of coverage in case of loss.

Moultrie suffered a fire on January 17, 1975. It claimed that coverage was determined by its monthly report for December 1974, reflecting a covered value of $143,-426.50. Universal Underwriters claimed the loss was limited to the $74,533.36 value reflected in the November 1974 report. Moultrie claimed to have mailed its December 1974 report on January 16, one day before the fire. Universal Underwriters argued that this report with enlarged values was mailed hurriedly after the fire, perhaps on January 18. The December 1974 report was received on January 20, 1975; no postmark was preserved.

The loss limitation clause confined liability to the amount "last reported prior to the loss." [1] Universal Underwriters argued that "last reported" could only mean "received by the insurance company and on file in its office prior to the loss." Moultrie argued that a report placed in the mail prior to the loss was the "last reported." The trial judge concluded that "last reported," as used in the policy, was sufficiently ambiguous to require judicial interpretation. He then construed "last reported" to mean "placed in the mail prior to the loss" and submitted to the jury the question of whether the December 1974 report was mailed before or after the fire on January 17, 1975. The jury resolved the question in plaintiff's favor, and recovery was based on the December 1974 report.

This diversity action is governed by Georgia law, and if a procedure existed for certifying the question of what "last reported" means to the Georgia courts, we would gladly do so and defer to their judgment. But as Georgia has no certification procedure, we must seek to unravel this question as the Georgia courts would interpret it.

After closely reading the value reporting clause, Paragraph 8, and the loss limitation clause, Paragraph 9, we must reverse the trial court's conclusion that the term "last

1. 9(b) [I]f at the time of any loss the insured has failed to file with this Company reports of value as required in Paragraph 8, liability is limited to that proportion of the amount last reported prior to the loss that the actual value at the loss location on date of the loss bears to the total actual value at all locations on date of loss.

reported" is ambiguous. Unless "last reported" in the loss limitation clause is interpreted to mean "last filed," the term "report" means one thing in Paragraph 8 and another in Paragraph 9.

8. Value Reporting Clause. It is a condition of this supplemental policy that the insured *shall report to* this Company not later than thirty (30) days after the last day of each calendar month, the actual cash value of all property covered hereunder on the last day of each calendar month. Such reports of value are to include the values of any property insured hereunder which may be elsewhere than at locations specifically named on Pages 1 and 2.

9. Loss Limitation Clause. Liability under this supplemental provision shall not in any case exceed the lesser of the following:

(a) That proportion of any loss hereunder, which the last value reported to this Company prior to the loss bears to the actual cash value of the property hereinbefore described on the date for which the report was made, provided further that,

(b) if at the time of any loss the insured has failed *to file with this Company* reports of values *as required in Paragraph 8*, liability is limited to that proportion of the amount *last reported* prior to the loss that the actual value at the loss location on date of the loss bears to the total actual value at all locations on date of loss.

[emphasis added]. Paragraph 9(b) says that "report" as used in Paragraph 8 means "filed with this Company." We can see no reason not to interpret "last reported" as used in Paragraph 9(b) also to mean "filed with this Company." Otherwise, there is an inconsistency in the policy. The value reporting clause protects the insured from over-insuring by adjusting his premium as the value of stock increases or decreases. The loss limitation clause protects the insurer from incurring greater risk than has been paid for by limiting coverage to the last value relied upon to set premiums. Giving "report" a different meaning in each clause amounts to rewriting the contract in the name of ambiguity.[2] This we cannot sanction.

Our grammatical analysis is bolstered by the policy considerations supporting this interpretation of "last reported." Faced with a similar value reporting clause,[3] the Louisiana courts have held that "reported" is not

**2.** The district court's definition of "report" rewrites the policy by removing the insurance company's protection against an insured who undervalues inventory to obtain low premiums and then inflates value *after* a loss to obtain a higher coverage than he has paid for. A review of Moultrie's monthly reports before and after the January 1974 fire illustrates the need for a definition of "report" that prevents changing reported values after a loss:

| Date | Total Value Reported |
|---|---|
| September 1974 | $ 87,016.31 |
| October 1974 | 71,495.11 |
| November 1974 | 74,533.86 |
| *December 1974 | 143,426.50 |
| January 1975 | 24,000.00 |
| February 1975 | 45,000.00 |
| April 1975 | 45,000.00 |

* This is the report Moultrie claims to have mailed the day before the fire. Universal Underwriters introduced evidence that a letter mailed the day after the fire could have reached its office on the same day the December 1974 report was received. To define report as depositing in the mail creates the opportunity for changing values after a loss, whether or not that happened in this instance, a matter on which we neither hold nor imply we hold any opinion whatever.

**3.** B. VALUE REPORTING CLAUSE: The insured shall report in writing to the Company, not later than 30 days after the last day of each calendar month, the exact location of all property covered and the total actual cash value of such property at each location as of the last day of each calendar month. At the time of any loss, if the insured has failed to file with the Company reports of values as above required, this policy, subject otherwise to all its terms and conditions, shall cover only at the locations and for not more than the amounts included in the last report of· values filed prior to the loss. . . .

*Reilly-Benton Co., Inc. v. Liberty Mutual Ins. Co.*, 278 So.2d 24, 25 n. 2 (La.1973).

ambiguous as used and that a value is not "reported" until it is received:

There is no ambiguity in the words "reported" and "filed" as used in the monthly reporting policy. The obvious and simple meanings found in Webster's New International Dictionary, Second-Edition, should suffice. "Report" or "reported" there is defined as "to give notification of." File means "to deliver to the proper officer so that it is received by him to be kept on file among the records of his office." . . . The obvious import of the words "reported" or "filed" is that the intended recipient of the document to be "filed" or "reported" actually receive the document. One does not report until the recipient receives "notification" of the report; one has not filed until the recipient has received custody of the document.

Thus, we conclude that the words "reported" and "filed" mean transmitted to, and delivered unto, the insurer, both by simple definition and in the necessary context in which such words are used in this "monthly reporting policy." Depositing in the mail prior to the loss does not constitute reporting to, or filing with the insured prior to the loss.

*Reilly-Benton Co., Inc. v. Liberty Mutual Insurance Co.,* 278 So.2d 24, 28 (La.1973).

Our court has previously interpreted Georgia law to require that monthly value changes in these fluctuating inventory policies be filed *before* the loss, despite the thirty-day grace period for filing a report for the month just ended. *Camilla Feed Mills, Inc. v. St. Paul Fire and Marine Insurance Co.,* 177 F.2d 746 (5th Cir. 1949). To interpret "report" to mean placed in the mail is to defeat the holding in *Camilla Feed Mills* by creating a capability in the insured to change values after a loss. The simple act of turning the date back on a postage meter and the decreasing incidence of legible postmarks, combined with the increasing unpredictability of mail delivery, would make it virtually impossible for an insurance company ever to determine whether a report was placed in the mail before or after a loss.

We therefore reverse the district court and hold that an insurance notice is reported on the date it is received, not on the date it is mailed.[4] The December 1974 monthly report was received on January 20, 1975, three days after the fire. This makes the November 1974 value the last one reported to Universal Underwriters before the fire, and according to the loss limitation set forth in Paragraph 9, Moultrie's recovery for its loss on January 17, 1975, is governed by the November 1974 values.

REVERSED and REMANDED for entry of a judgment consistent with this opinion.

---

4. This holding is consistent with an early Georgia ruling that a notice of cancellation to an insurance company is not effective until it is received. *Bankers' Mut. Cas. Co. v. People's Bank,* 127 Ga. 326, 56 S.E. 429 (1907).

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.