Ron BRADHAM, d/b/a T.C.M.
Components, Plaintiff,

v.

RANDOLPH TRUCKING COMPANY,
INC., Defendant and Third–Party
Plaintiff,

v.

CAROLINA CASUALTY INSURANCE
COMPANY and Insurance Administrators, Inc., Third–Party Defendants.

Civ. No. 89–4–ALB/AMER(DF).

United States District Court,
M.D. Georgia,
Albany Americus Division.

Aug. 28, 1991.

John V. Harper, Ellis, Easterlin, Peagler & Gatewood, P.C., Americus, Ga., for plaintiff.

Hilliard P. Burt, Burt & Burt, P.A., Albany, Ga., Jess D. Campbell, Cheek & Campbell, Knoxville, Tenn., Mark A. Gonnerman, Watson, Spence, Lowe & Chambless, Albany, Ga., Robert E. Corry, Jr., Michael T. Thornton, Atlanta, Ga., for defendant.

FITZPATRICK, District Judge.

This case is before the court on cross-motions for summary judgment by defendant and third-party plaintiff Randolph Trucking Company, Inc. ("Randolph Trucking" or "Randolph") and third-party defendant Carolina Casualty Insurance Company ("Carolina"). In order to justify granting summary judgment to a party under Federal Rule of Civil Procedure 56(c), the record must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." After due consideration, the court has decided to grant Randolph Trucking's motion and deny Carolina's.

## BACKGROUND

This suit arose out of an accident on September 23, 1986, which damaged a seventeen-foot Stamco shear weighing 65,000 pounds belonging to the plaintiff Ron Bradham, d/b/a TCM Components, which was being carried on a Peterbilt truck owned by Randolph Trucking from Alcoa, Tennessee, to Ellaville, Georgia.

On September 3, 1986, Randolph Trucking purchased the 1984 Peterbilt truck in question and then notified Insurance Administrators, Inc., ("IA"), an independent insurance agency, to add the Peterbilt to Randolph's fleet insurance policy with Carolina. At some point IA issued a certificate of insurance on the Peterbilt to Blount National Bank. At this same time, Randolph retired a 1974 International truck which was covered under the policy. The International had a broken frame and needed repairs, but when the Peterbilt was acquired the International was taken completely out of service and junked for spare parts. Both the license and the regular driver of the International were transferred to the Peterbilt.

On October 16, well after the accident, IA sent a memorandum to Agency Specialty Service, Carolina's general agent, requesting that the Peterbilt and a Kenworth truck be added to Randolph's policy and that the International be deleted. This was the first indication that Carolina had that Randolph wanted the Peterbilt added to its policy. When Randolph notified Carolina of the accident, presumably after Carolina received the memorandum from IA, although the record is not clear on this point, Carolina refused to provide insurance coverage, claiming that the truck had never been added to the fleet policy.

TCM Components sued Randolph Trucking and obtained a default judgment. Randolph filed a third-party complaint against Carolina, which in turn filed a counterclaim against Randolph and a cross-claim against IA. Randolph Trucking and Carolina are presently at odds over the language in part II(B) of the policy, which reads as follows:

A truck you acquire which permanently replaces a covered truck will be a covered truck for 30 days with the same coverage(s) and limits of liability in effect for the truck replaced.

NOTICE: If you want to continue the coverage(s) and limits of liability on that truck, you must tell us within the 30 days after you acquire it that you want to insure it and what coverage(s) and limits of liability you want on that truck. Premium will be adjusted accordingly.

(emphasis in original). Randolph contends that the policy provided coverage for the Peterbilt for 30 days after that truck replaced the International and required Randolph to notify Carolina within 30 days if it wanted to continue coverage on the Peterbilt past that point. Carolina reasons that the quoted language requires that it be given notice of the purchase of the new truck within 30 days as a condition precedent to coverage on that vehicle and that, in any case, it is unclear whether the Peterbilt or the Kenworth was intended to replace the International.

## DISCUSSION

1. Choice–of–Law

■ The insurance contract contains no choice-of-law provision, so the first task

before the court is to determine whether the law of Georgia or of Tennessee applies. "In diversity cases, the choice-of-law rules of the forum state determine which state's substantive law applies." Georgia is the forum state, and under Georgia choice-of-law rules the interpretation of insurance contracts is governed by the law of the place of making. Insurance contracts are made at the place they are delivered. *American Family Life Assur. Co. v. United States Fire Co.*, 885 F.2d 826, 830 (11th Cir.), *reh'g denied*, 892 F.2d 89 (1989).

■ The policy in this case was almost certainly executed and delivered in Tennessee, but the Eleventh Circuit has also held that under Georgia choice-of-law rules the application of another jurisdiction's laws is limited to statutes and decisions interpreting those statutes. "Where no statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law." *Frank Briscoe Co. v. Georgia Sprinkler Co.*, 713 F.2d 1500, 1503 (11th Cir.1983); *see also, Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 725 n. 6 (11th Cir.1987) *cert. denied*, 485 U.S. 959, 108 S.Ct. 1221, 99 L.Ed.2d 421 (1988); *Sheftelman v. Jones*, 667 F.Supp. 859, 869–70 (N.D.Ga.1987). Randolph has cited the Tennessee case of *Palmer v. State Farm Mutual Automobile Ins. Co.*, 614 S.W.2d 788 (Tenn.1981), as supporting its position, but that case neither relies upon nor construes any Tennessee statute, meaning that the common law of Georgia controls this case.[1]

## 2. Whether the Peterbilt was Covered

### A. The Policy Language

■ The first thing this court must do is to examine the language of the contract. Insurance is a contract and contract law principles are to be applied to questions involving insurance. *Wood v. State Farm Life Ins. Co.*, 146 Ga.App. 186, 245 S.E.2d 876, 878 (1978). The construction of insurance contracts in Georgia begins with the premise that a policy must be construed to carry out the true intentions of the parties, and all other rules of contract interpretation and construction are subservient to that principle. *Ryder Truck Rental, Inc. v. St. Paul Fire & Marine Ins. Co.*, 540 F.Supp. 66, 69 (N.D.Ga.1982). The rights of the parties are determined by the language of the contract. *Fidelity & Deposit Co. v. Sun Life Ins. Co.*, 174 Ga.App. 258, 329 S.E.2d 517, 519–20 (1985).

■ The language of part II(B) of the policy quoted above is quite clear. Assuming for the purposes of this section that the Peterbilt was a permanent replacement for the International, the policy language provides that Randolph had thirty days in which to notify Carolina that it had acquired the Peterbilt, but during those thirty days the same coverage that applied to the International applied to the Peterbilt. If Randolph had wanted to continue coverage on the Peterbilt past the thirty day period, the policy would have required it to notify Carolina before those thirty days passed. Carolina would then have had a chance to adjust its premium to reflect its new risk. This contract clearly provided for coverage for the Peterbilt, at the level

---

1. The court in *Kirkpatrick* noted that even if Georgia law were to require the application of Georgia common law, this could be done consistently with due process only if the transaction in question had some significant relation to Georgia. 827 F.2d at 725 n. 6. It is conceivable that due process would require the application of Tennessee law in this case, since the insurance contract was by all appearances executed and delivered in that state, although the fact that Randolph's trucks do business in Georgia and are presumably licensed in this state could provide sufficient minimum contacts to justify using Georgia law.

The court need not embark on a due process analysis, however. As an alternative to the discussion in the text, it would make no difference to the court's ultimate holding in this case if due process or Georgia common law were to require the application of Tennessee law, since the Supreme Court of Tennessee's decision in *Palmer*, 614 S.W.2d 788, would certainly allow the Peterbilt in the present case to be covered under Randolph's insurance policy. The *Palmer* court interpreted a clause similar to the one at issue here to provide coverage on a newly acquired automobile during the thirty day notice period and to preclude coverage after that period if the insured had not applied to the insurance company for coverage on the vehicle during that period. *Id.* at 790–91.

of coverage provided for the International it replaced, during the thirty days after it was acquired whether Carolina was notified of the replacement or not.

Carolina contends that this reading is unfair, since it would allow an insurer to be liable for a risk it did not know existed, which it had never assessed and for which it had never received a premium payment. If an insurer is to assume the risk of insuring a Mercedes Benz purchased to replace the Ford, Carolina reasons, it should at least have prompt notice in order to adjust its premium. (Carolina's Memorandum in Opposition, p. 2). These concerns are defeated by the policy language quoted above. During the thirty day period, Carolina is potentially liable only for the amount of coverage purchased for the old vehicle, here the International, for which it has already been paid. If the value of the replacement vehicle exceeds the coverage of the old vehicle under the policy, this uncovered risk is borne by the insured.

### B. Case Law

█ Furthermore, the weight of case law supports this conclusion, see 7 Am.Jur. 2d, Automobile Insurance, § 233, and Georgia law is no exception. In *Georgia Mutual Ins. Co. v. Criterion Ins. Co.*, 131 Ga. App. 339, 206 S.E.2d 88 (1974), the court specifically held that where an "automatic insurance" clause requires notice of the acquisition of a new automobile to be given to the insurer within a specified time after delivery and an accident takes place within the notice period but before notice is given, then the requirement of notice is a condition subsequent and that coverage is automatic upon delivery of the new automobile and remains in effect until the end of the specified period, regardless of whether notice has been given. The court noted that its decision was in accord with the great weight of authority. 206 S.E.2d at 90. Applying this rule to the facts at bar would certainly work in Randolph's favor, since the accident in question occurred twenty days after the delivery of the Peterbilt. Assuming for the moment that the Peterbilt was a replacement for the International, it would have been covered by the policy at the time of the accident.

Carolina, however, claims that *Georgia Mutual* has been implicitly overruled and cites *Moultrie International Inc. v. Universal Underwriters Ins. Co.*, 545 F.2d 543 (5th Cir.1977), and *Preferred Risk Mutual Ins. Co. v. Miles*, 152 Ga.App. 744, 263 S.E.2d 708 (1979). In *Moultrie International,* the insured, a farm equipment dealer, sued the insurer under a stock floater policy allowing the insured to report within thirty days of the end of a month the value of its inventory for the month just ended. The last reported value governed the amount of coverage. The plaintiff suffered a fire in January of 1975 and claimed its coverage was determined by its December 1974 report, which it had mailed the day before the fire. The insurer contended that coverage was determined by the November 1974 report, which gave a lower value for the plaintiff's inventory, since the December report was not received until after the fire. In reversing the district court's interpretation of the policy, the Fifth Circuit held that under Georgia law the term "last reported" meant "last filed," so that an insurance notice is reported on the date it is received by the insurer, not mailed by the insured. 545 F.2d at 546.

In *Miles*, the insurance company appealed a jury verdict favoring its insured in an action for a declaratory judgment to decide whether it had an obligation to defend the insured against a claim. The car for which the insured had initially purchased the policy was damaged in an accident, after which the insured's husband bought her another car and notified the insurance company of the purchase within thirty days. A lawsuit arose when this second car was involved in an accident and the insurer refused to defend its insured. The court held that there was sufficient evidence to support the court's denial of a directed verdict on the grounds that the second car could qualify as an additional automobile which the policy would cover as long as timely notice of its delivery was given. 263 S.E.2d at 709.

Both of these cases are distinguishable. Carolina's reliance on *Moultrie Interna-*

*tional* is misplaced, most obviously because a federal court does not have the authority, implicitly or otherwise, to overrule a Georgia court's interpretation of Georgia law. *Moultrie International* is also distinguishable factually, since the policy in that case was a fluctuating inventory policy, while this policy is merely a standard policy with a clause allowing for temporary coverage of replacement trucks before notice is given. The court stated that the goal underlying its holding was to prevent an insured from inflating the value of property after a loss by fraudulently putting a date preceding the loss on the monthly report and then mailing it, which would fix the amount of coverage at a higher figure. 545 F.2d at 546. This goal does not apply in the present case, since the policy here fixes coverage as of the effective date of the policy at a figure which cannot be inflated by the insured.

Also, the court there reached its ruling to avoid an inconsistency in the policy language which would have existed had the district court's interpretation been allowed to stand. No such inconsistency has been cited in the policy at issue in this case. Another weakness in Carolina's argument is that *Moultrie International* never mentioned *Georgia Mutual*, the leading Georgia case concerning reporting clauses. Perhaps the court realized that *Georgia Mutual* and the case before it were dissimilar. Moreover, the Fifth Circuit panel recognized that its analysis was a risky one by stating that it would have certified the question of the meaning of "last reported" to the Georgia courts had a procedure existed for doing so. *Id.* at 544. *Moultrie International* has no bearing on this case.

The same is true of *Miles*. The most obvious distinction between that case and this one is that in *Miles* notice of the delivery of the new car was made within thirty days. The only question in that case was whether the second car qualified as a replacement or temporary substitute for the first vehicle or as an additional automobile. The question of notice was not at issue. Contrary to Carolina's reading of the case (Carolina's Memorandum of Law in Support of Motion for Summary Judgment, p. 15), the chronological statement of the facts in *Miles* makes clear that the notification occurred before the accident involving the second car. The fact that the court in *Miles* failed to mention *Georgia Mutual* is perfectly understandable, since the cases are inapposite.

The court concludes that the rule of *Georgia Mutual*, 206 S.E.2d 88, is still the law in Georgia. The plain language of the contract, combined with this rule, supports the conclusion that the Peterbilt was a covered truck on the date of the accident, assuming it was a replacement for the International.

3. Whether the Peterbilt Replaced the International

■ Carolina also contends that since Randolph purchased a Kenworth truck at the same time it bought the International, it is unclear which vehicle was intended to replace the International. Carolina reasons that since the notice it was given after the accident was unclear on this point, Randolph's argument must fail. This argument is not persuasive.

Although the term "replace" is not defined in the policy, the court is obligated to give words in insurance policies their plain and literal meaning if they are capable of only one reasonable interpretation. *U.S. Fidelity & Guaranty Co. v. Gillis*, 164 Ga.App. 278, 296 S.E.2d 253, 255 (1982). Webster's Seventh New Collegiate Dictionary defines "replace" in part as "to take the place of" and "to fill the place of." Under this definition the Peterbilt qualifies as a replacement for the International.

The *uncontroverted* evidence supplied by Randolph Trucking, as discussed above, unambiguously shows that the Peterbilt, not the Kenworth, took the place of the International. Mr. Stewart Randolph, part owner of Randolph Trucking, stated this in his sworn deposition. (Stewart Randolph Depo., p. 9). Once the Peterbilt was purchased, the International was junked, and its license and regular driver were transferred to the new Peterbilt. (Randolph Depo., pp. 6, 9–10). The court feels that

**400**

this is sufficient to show that the Peterbilt replaced the International.

## CONCLUSION

In summation, the court concludes that Georgia law applies to this case (although the result would apparently be the same if Tennessee law were to apply), that both the plain language of the policy and Georgia case law provide that coverage existed on the Peterbilt at the time of the accident and that the Peterbilt was a replacement for the International. Randolph Trucking's motion for summary judgment is GRANTED and Carolina's is DENIED.

SO ORDERED.