**CAMILLA FEED MILLS, Inc. v. ST. PAUL FIRE & MARINE INS. CO. OF ST. PAUL, MINN.**

No. 12903.

United States Court of Appeals
Fifth Circuit.

Nov. 18, 1949.

Leonard Farkas, Walter H. Burt, Albany, Ga., for appellant.

H. H. Perry, Jr., Menard B. Peacock, Asa D. Kelley, Jr., Albany, Ga., for appellee.

Before HOLMES, WALLER, and SIBLEY, Circuit Judges.

HOLMES, Circuit Judges.

This action was brought by appellant against the appellee to recover for a fire loss upon a provisional policy of insurance issued by the appellee. By agreement of the parties, the case was submitted to the district judge, without a jury, on an agreed statement of facts. He rendered a judgment in favor of the Insurance Company,

and it is from this judgment that the Camilla Feed Mills, Inc., appeals to this court.

The judge based his findings of fact upon the admissions contained in the stipulations and pleadings, since there were no contested issues of fact. The following facts are those that were agreed upon by the parties: On February 5, 1948, the appellee issued a fire insurance policy, known as a reporting-form policy, which in the present case covered a fluctuating inventory of grain and other like commodities dealt in by the appellant in the operation of his feed-mill business. One of the conditions of the policy was that the insured should report within thirty days after the end of each month the amount of his inventory for the preceding month. If no such inventory was reported, then the last reported inventory of the prior month was to be accepted as that of the month not reported. The purpose of having these inventories reported each month was to have monthly reports on which to base the premium for this policy. An average of all the monthly reported inventories was taken at the end of the year, and the premium for the past year's insurance was based on this average. On March 27, 1948, the appellant reported that the total actual value of its inventory on hand as of February 28, 1948, was $3000. On May 7, 1948, the appellant reported the value of its inventory as of March 31, 1948, was $3000. On the same day, May 7, 1948, appellant likewise reported that the value of its inventory as of April 30, 1948, was $3000. On June 10, 1948, without any additional reports having been made, the property was destroyed by fire. After the fire, an inventory of the books revealed that the appellant's inventory as of April 30, 1948, amounted to $9529.50 instead of $3000 as reported. At the time of the fire, the property destroyed was found to be worth $10,-091.49. On June 24, 1948, which was after the fire, the appellant reported to the appellee that its inventory at the time of the fire was $10,099.23. There was no other insurance on appellant's property. The appellant had complied with all the terms of the policy in question, and had paid the premium of $462.04.

The dispute between the parties revolves around an interpretation of this type of policy. The primary question presented to this court is whether the appellant could, after the fire, amend, change, or reform its last report filed prior to the fire when such report did not correctly reflect its inventory as of that date, and substitute for the figures reported the correct amount of the inventory. The court below concluded that no sufficient cause was shown to authorize the reformation sought by appellant, and that the report dated May 7, 1948, showing the inventory value as of April 30, 1948, was conclusive and final. It further concluded that, under the provisions of the policy, the apellee was liable to the appellant for only the proportion of the loss sustained that the amount of inventory shown in the last report filed prior to the fire bore to the actual inventory on hand at that time.

The policy involved in this case was intended to offer to the owners of fluctuating businesses the opportunity of full insurance coverage while at the same time exacting from the insured only the amount of premiums figured on the average monthly amount of reported inventory. Thus the owner of a stock of goods that would fluctuate from $1000 one month to $9000 the next month could insure his property under this policy and pay a premium on the monthly average of his reported inventory, and be protected. He would not have to take out specific insurance on the stated amount of $9000 to protect his maximum or $1000 to protect his minimum. The one big obligation placed on the insured under such a policy was that he report to the company, not later than thirty days after the last day of each month, the exact value of such property covered under the policy, its exact location, and all other specific insurance in force on the same.

The premium collected on the policy at the time it was issued represented three-fourths of the total premium of the policy, figured on the limit of its liability, which limit in this case was $9000. After the final premium was calculated from the average of the monthly reported values of inventory provided for in the policy, the insured was either given a refund if it had

748

paid too much, or asked to pay more if it had paid too little, on the original payment of three-fourths of the premium of the limit of the liability. From such a method of computing the premium, it can easily be recognized that the insured, in order to save premiums, might not correctly report the true value of his inventory. During the term of a policy, an insured could mistakenly underestimate the amount of his inventory and, if there were no loss, pay a premium based on such under-estimated amounts; and if, during the term of the policy, a loss occurred, he could simply ask the court to correct the erroneous estimate that had been made. In this way, according to appellant's contentions, an insured could easily escape the payment of the correct amount of premiums where there was no loss; and, in the event of a loss, he could collect the full amount of his policy by offering to pay an additional amount of premiums. In order to offset this advantage to the insured, the policy contains a provision to the effect that the liability of the insurer shall not exceed that portion of any loss sustained which the last reported value, filed prior to loss, bears to the actual value of the inventory on the date for which the report was made. The following material parts of the policy clearly indicate that the appellant must be bound by his last inventory report of $3000, which was filed prior to the fire:

"8. Value Reporting Clause. It is a condition of this policy that the Insured shall report to this Company not later than thirty (30) days after the last day of each month, the exact location of all property covered hereunder, the total value of such property at each location and all specific insurance in force at each of such locations on the last day of each month. At the time of any loss, if the Insured has failed to file with this Company reports of values as above required, this policy, subject otherwise to all its terms and conditions, shall cover only at the locations and for not more than the amounts included in the last report of values, filed prior to the loss.

"9. Full Reporting Clause. Liability under this policy shall not in any case exceed that proportion of any loss hereunder, which the last reported value filed prior to the loss, less the amount of specific insurance reported, if any, at the location where any loss occurs bears to the actual value less the amount of specific insurance, if any, at that location on the date for which report is made. Liability for loss hereunder, occurring at any location acquired since filing the last report (except as provided by the Value Reporting Clause) shall be apportioned in a like manner except that the proportion used shall be the relation that values reported at all locations less the amount of reported specific insurance, if any, bears to the actual values less the amount of specific insurance, if any, at all locations on the date for which report is made."

In this case, the appellee has collected premiums, not on the $9000 limit stated in the policy, but only on the average of the monthly reported values. In addition, the policy offered the appellant the full opportunity, provided he filed correct reports under the terms of the policy, to protect himself and recover the full amount of his loss up to $9000, the limit of liability stated in the policy. It is clear that where the insured does not make correct reports of the value of his inventory, the insurer under the terms of the policy does not undertake to assume the entire risk incident to the insurance against fire of the property destroyed. The policy, by its provisions, states in effect that if an insured makes a report of values which amounts to only one-third of the value of the inventory insured, then the coverage under the policy is automatically reduced to one-third of any loss sustained, not in excess of the maximum limit of liability stated in the policy. Here, the policy stated a limit of liability of $9000. The insured reported an inventory for the last month before the fire of $3000, whereas it had an actual inventory of $9529.50. The proportion of this last reported inventory to the actual amount of inventory was 31.48%. The actual amount of appellant's loss was $10,099.23. Thus the amount of coverage was $10,099.23 X .3148 or $3179.24. This was what appellant was actually entitled to by virtue of its reported inventory; but if it had suffered a

loss of $27,000, it might have recovered the full limit of liability as stated in the policy, even though it had reported only a $3000 inventory. For this reason, the provision in the policy was a fair and just one to appellant, as well as a protection to the appellee.

■ Appellant, by asking this court to reform the inventory reported prior to the fire, is in a sense asking the court to reform its evidence. Appellant bases its request for reformation on the fact that its inventory report was made merely on an estimate and that the estimate was not correct. Appellant wants to be relieved of a mistake resulting from poor judgment on its part; it does not claim that there was any mistake in the terms of the policy or contract between the parties. There is no contention that the policy did not reflect the true intention of the parties. The mistake sought to be corrected was due solely to appellant's poor estimate. This was an error of judgment, not a mistake of fact. It was not a mutual mistake; the appellee had nothing to do with the making of it; and no fraud or illegal conduct may be imputed to the latter. The equitable remedy of reformation is usually granted where there has been a mutual mistake of the parties or a mistake on the part of one and fraud, bad faith, or inequitable conduct, on the part of the other. A unilateral mistake is not ordinarily a ground for reformation. The remedy, if there be one in such a case, is rescission. Appellant had within its power the method of determining just exactly the true amount of this inventory, but it did not choose to avail itself of the same. No effort was made accurately to determine the true inventory, but it simply chose to estimate the value. Appellant made no mistake in reporting the amount of $3000. It did this deliberately, and intended that the report should be for $3000. When appellant chose to estimate rather than calculate the amount of the inventory, its mistake was made. By so doing, it assumed the risk of the estimate being wrong; and, since there was a loss, the amount of its recovery is governed by the provisions of the value-reporting clause of the policy.

■ Appellant contends that, since the policy did not require reports to be filed except within thirty days after the last day of the previous month, and since the fire occurred on June 10th, the appellant had the right to file a report within thirty days from May 31st, and that it did so by filing a report on June 24, which correctly reflected the inventory on hand on May 31st. This contention conflicts with the express provision of the policy which provides that in case of loss the company's liability shall be governed by the last report filed prior to the loss. Such a report, filed after a loss but within the grace period allowed by the policy, was not given any effect in Wallace v. World Fire & Marine Insurance Company of Hartford, Connecticut, 70 F.Supp. 193, affirmed 9 Cir., 166 F.2d 571. In that case, it was held that where a provisional reporting fire insurance policy required a monthly report of location and value of property, with a thirty-day grace period, and provided that, if insured failed to make such monthly report, the policy would cover only the last report of values filed prior to the loss, the insured could not recover on a report made after a fire on the ground that it was within the grace period. Likewise, we conclude that in this case the period of grace for the filing of reports of values does not extend to any time after the fire loss, even though the thirty-day grace period has not expired.

■ Appellant has devoted a large portion of its argument to the provision of the policy limiting the insurer's liability to that proportion of any loss sustained which the last reported value, filed prior to the loss, bears to the actual value of the inventory on the date for which the report was made. It claims that this provision is violative of Section 56-701 of the Georgia Code, which is as follows: "All insurance companies shall pay the full amount of loss sustained upon the property insured by them: Provided, said amount of loss does not exceed the amount of insurance expressed in the policy; and all stipulations in such policies to the contrary shall be null and void. In cases of losses on stocks of goods and merchandise and other species of personal property changing in specifics and quantity by the usual customs of trade, only the actual value of the property at the time of loss

may be recovered: Provided, the loss does not exceed the amount expressed in the policy."

Appellant's contention presents a serious question, because on its decision may depend the future of this type of contract. The question will arise as to whether insurance companies may continue to write this type of policy, which gives the owner of a fluctuating stock of goods an opportunity of full coverage upon the payment of a premium representing only the average reported monthly value of his inventory; or, in order fully to protect themselves, will merchants and others be required simply to obtain a policy in the highest amount that their inventory may reach during a given term and be required to pay premiums on that amount irrespective of the fact that the average risk assumed by the company and the average protection given to the insured may be much less.

The court below concluded as a matter of law that the terms of the policy with respect to the extent of the company's liability in case of loss did not violate or conflict with Section 56-701 of the Georgia Code. In construing this section, the Georgia courts have held that a policy providing for payment of only three-fourths of the value of the property insured, in the event of total loss, is contrary to the terms of the statute. This is evident, because the statute provides that the insurance companies shall pay the full amount of loss sustained upon the property insured, and the above mentioned ruling was on a policy that expressly provided for payment, in case of loss, of only three-fourths of the value of property insured. Such a provision is void, because the insured could not recover the full amount of his loss up to the amount of the policy. Any fire insurance policy insuring property in a stated amount and under which premiums are payable and collected on the amount thus stated in the policy, but which contains a provision that arbitrarily prevents the insured from recovering the full amount of his loss up to the amount of his policy, the policy being one under which the insurer purports to assume the entire risk of loss, would certainly be repugnant to the provisions of said Section 56-701; but neither the statute in question nor the decisions have gone far enought to invalidate policies of the character here involved. It seems unreasonable to conclude that the Georgia legislature intended to outlaw the type of policy here in question.

It is possible in this case for the insured to realize the full limit of liability under this policy. As above stated, if the insured had reported an inventory of $3000, whereas he actually had an inventory of $9000, he could recover one-third of his loss up to the amount of the limit of liability. If he sustained a loss of $9000, his recovery would be $3000; if he sustained a loss of $27,000, he would recover the full amount of liability, $9000, as fixed by this policy. Again, if insured reported an inventory of $9000, and had an actual inventory of $9000, and lost property worth $9000, he would recover $9000, which is the limit of liability in this policy. The insured in this case, after having made his inventory report, by ascertaining the true amount of his inventory as of the date reported, accurately could have determined the exact amount of coverage he had on the inventory, or the amount of insurance he would collect if he should suffer a loss. If appellant's contention should be sustained, any clause in a policy of insurance which prevented the insured from recovering the full amount of his loss up to the amount of insurance would be void. Thus the provisions requiring insured to make inventory, keep books, and make correct reports, the failure of which would invalidate the policy, would be void under appellant's interpretation of the statute. Our courts have recognized the validity of provisions making policies void if insured did not file reports, keep books, and report inventories. It seems that, if these provisions are recognized as being valid a more lenient and beneficial provision, which provides in effect that if incorrect reports are made, the policy will not be wholly void, but the amount of coverage with respect to the loss would be simply that proportion of the loss which the reported value bore to the actual value of the inventory, should be allowed to stand.

This policy is not an attempt by the insurance company to get around the statute. It appears to us to be one definitely for the benefit of the insured. It would be practically impossible for the insurance companies to check the books of all such insureds at the end of each month. To do so would require a great number of book-keepers. The companies have to depend on the reports of their insureds. The premiums are calculated on the reported values made by the insureds and not on any checked values made by the insurers. The insured is asking the court to override its agreement with the insurance company, on the ground that the policy of the laws of Georgia prohibited it from entering into such an agreement, and that, by virtue of such a violation of the law, it is not bound by its agreement. We are impelled to reject this contention. The policy in question does not violate said Section 56-701, as this court understands the laws of Georgia. The court below was correct in denying appellants' prayer for reformation of the report. The liability of the insurer was fixed at the time of the loss, and the appellant cannot now, after the fire, increase this liability by offering to pay additional premiums. The judgment appealed from is affirmed.