169 N.J. Super. 474 (1979)
404 A.2d 1281
WATCHUNG POOL SUPPLIES, INC., A NEW JERSEY CORPORATION, PLAINTIFF,
v.
THE AETNA CASUALTY AND SURETY COMPANY, A DIVISION OF AETNA LIFE AND CASUALTY COMPANY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided June 15, 1979.
*476 Mr. Edward B. Deutsch for plaintiff (Messrs. Connell, Foley and Geiser, attorneys).
Mr. Glen R. Moran for defendant (Messrs. Leary and D'Ambrosio, attorneys).
MacKENZIE, J.S.C.
This declaratory judgment action, N.J.S.A. 2A:16-50 et seq., seeks a determination of the obligation of defendant insurance company (hereinafter Aetna) as the result of a fire at one of plaintiff's (hereinafter Watchung) places of business. The applicable insurance policy, which was in full force and effect, contains a multiple location, "value reporting clause" which requires judicial interpretation. Research fails to disclose any reported New Jersey case which has considered such a provision.[1]
Reargument of Watchung's previously denied motion for summary judgment is before the court, R. 4:46-2. The parties have stipulated that certain material facts are not controverted. The simple factual setting follows: Watchung operates a retail business of sale and service of swimming pools and accessory supplies at various New Jersey locations. The cause of action arose on July 7, 1977, when a fire destroyed Watchung's East Hanover, New Jersey, warehouse and the contents. As issued by Aetna on March 19, 1976, its three-year multi-peril policy insured this building for $50,000 *477 and the contents against a maximum $100,000 loss. Other Watchung buildings and contents were also insured at the time of the fire under the policy. The original policy coverage was modified by a value reporting feature which had been added by endorsement on October 13, 1976. The endorsement required Watchung to advise Aetna in writing within 30 days of the end of each calendar month as to the total cash value of its inventory and other personalty stored in every warehouse. The declared value of contents then defines the insurance coverage. Coverage thus varies from month to month. The original $100,000 maximum remained as an upper limit of coverage.
Watchung understood its obligation to report the monthly value of the contents kept at each of its many buildings. Not only is the language of the policy endorsement readily understandable, but the necessity to report value was explained to the insured by its insurance agent. It was not clear, however, that Watchung recognized another policy provision limiting its coverage should value not be reported in timely fashion. In fact, a practice developed whereby Watchung forwarded value reports for all its building contents to the agent. The agent then sent the Watchung reports to Aetna. Reports, values declared and filing dates as received by Aetna follow:

Report for the
last day of Value of Contents Filed On
September 1976 $ 68,906. March 16, 1977
October 1976 59,347. March 16, 1977
November 1976 69,468. March 16, 1977
December 1976 71,990. March 16, 1977
January 1977 63,436. March 16, 1977
February 1977 61,932. May 12, 1977
March 1977 57,743. May 12, 1977
April 1977 65,503. May 12, 1977
May 1977 87,358. July 13, 1977
June 1977 101,976. July 13, 1977

During the nine-month period covered by the endorsement prior to the loss Watchung submitted only the April 1977 *478 report within 30 days of the end of the prior month. Nevertheless, all the reports were accepted and filed by Aetna. No report was ever returned or rejected by Aetna nor was any notice of late submission given to Watchung prior to the fire. The only reports which appear to have been rejected during the policy period were the two reports which plaintiff attempted to file after the fire loss.
At the time of the loss the report on file with Aetna was for the last day of April 1977. In that report Watchung declared an inventory value of $65,503. There was no suggestion that the April value report was inflated, understated or otherwise fraudulent. The monthly report for the last day of the months of May and June (which contains the claimed value at the time of the loss) were both compiled by Watchung after the fire and were received by Aetna on July 13, 1977.
Watchung made demand upon Aetna for $100,000. After investigating the loss Aetna discovered that indeed the contents loss amounted to at least $100,000. The carrier, however, tendered payment for only $65,503 in reliance on the value reporting clause of the policy. Watchung provisionally accepted the payment while reserving its right to litigate over the sum of $34,497. Full payment of $50,000 for the loss of Watchung's building was also made and accepted. This action followed.
The major issues raised by this motion are whether Watchung's monthly value report filed after the fire is late, and, if so, whether it is barred by the policy. To deal with these issues it is necessary preliminarily to discuss this type of insurance before turning to the specific policy provisions.
This type of policy is known variously as value-reporting insurance, monthly-reporting insurance, reporting-form insurance or provisional insurance. As described in Peters v. Great American Ins. Co., 177 F.2d 773 (4 Cir.1949), this kind of insurance

*479 * * * is a device whereby the amount of insurance under the policy fluctuates with the value of changing stock of merchandise in a going business. It is designed to afford complete coverage and at the same time to avoid the maintenance of insurance in excess of the value of the property insured, so that the amount of the insurance, and the amount of the premium to be paid, are in direct proportion to the value of the goods on hand. Such a policy is obviously more favorable to the insured than a policy for a specified amount where the premium is calculated on the amount of insurance named in the policy although the amount of risk may be materially less from time to time during the life of the contract. [at 774-775]
Accord; Federal I. Credit Bank v. Globe & Rutgers F. Ins. Co., 7 F. Supp. 56 (D.C. Md. 1934); see Annotation, 13 A.L.R.2d 713 (1950); 6 Appleman, Insurance Law & Procedure, § 3866.25 (1972).
The purpose of the policy was characterized in Camilla Feed Mills v. St. Paul Fire & Marine Ins. Co., 177 F.2d 746 (5 Cir.1949) as follows:
The policy involved in this case was intended to offer to the owners of fluctuating business as the opportunity of full insurance coverage while at the same time exacting from the insured only the amount of premiums figured on the average monthly amount of reported inventory. [at 747]
Under such a policy the insurer reports the value of its merchandise to the insurance company each month, from which reports are ascertained (a) the value of the personal property to be covered under the policy and (b) the premium ultimately to be paid.
Value-reporting insurance is a coverage commonly selected by merchants (particularly those engaged in seasonal business) whose stock of goods inventory fluctuates significantly from month to month, either in amount or location. The policy has many advantages. The first is to provide flexible premium rates and coverage. Reporting-form policy provides that premiums will be calculated on the average monthly cash value of reported inventory. Thus, it eliminates the guesswork involved in attempting to project future inventory *480 values as of the time when the policy is issued. It prevents the unnecessary cost of overestimating future stock. It also obviates the dangers of underinsuring, whereby an estimate of future inventory is too low and the loss represented by the gap between coverage and actual loss is otherwise absorbed by the insured.
In operation, the insured pays an initial provisional premium based upon its estimate of the maximum amount of reportable property it will have on hand. This figure becomes the limit of liability under the policy. Watchung paid the first two yearly installments of its estimated premium of $39,122.64. The provisional premium is adjusted at the end of the three-year term of the policy on the basis of the average total values reported by the insured at each location; e.g., under the Aetna policy, the 36 monthly reports are totalled and divided by 36 in order to obtain the average value of the contents during the policy term. An adjusted premium bill is then rendered to reflect either an additional premium due, or a refund from the premium paid at the beginning of the policy term. An advantage to the carrier is that it does not insure a greater risk for an inadequate premium.
The one significant obligation placed on the insured by the policy is that it must report, not later than 30 days after the last day of the prior calendar month, the total value of property at each location covered by the policy. It is further provided that upon the failure of the insured to so report, in the event of loss, the last report of values filed prior to the fire will serve as the limit of loss.
The policy also contains a full reporting clause prescribing a formula for computing the liability of the insurer in certain situations. Under the formula, liability is limited to that proportion of the actual loss which the last reported value bears to the true value at the time of the last report. The purpose of this provision is to prevent the insured from underrating his inventory thereby reducing his premium and increasing the insurer's premium risk ratio. In the *481 event that less than full value of inventory to be covered is reported and a loss occurs an adjustment is made by determining the ratio of the reported value to the full value at the time of the report and then applying that ratio to the actual loss. See Aetna Ins. Co. v. Rhodes, 170 F.2d 111, 112 (10 Cir.1948). Read together, these provisions establish the conditions of insurance going to coverage, including the amount of insurance carried, the premium to be paid and the extent of liability of the carrier. All of these factors are controlled by the insured within the maximum coverage set by the policy.
The pertinent provisions of the Aetna value reporting endorsement are hereinafter set forth:
III REPORTING PROVISIONS
A. Provisional Amount Clause:
The amount of insurance provided for hereunder is provisional and is the amount on which the provisional premium is based, it being the intent of this insurance to insure hereunder the total actual cash value of the property described herein subject to the Limits of Liability for all contributing insurance. Any loss in excess of the limits stated in this policy shall be borne by the insured notwithstanding the requirement that premium is to be adjusted on the basis of full values reported.
B. Value Reporting Clause:

The Insured shall report in writing to the Company, not later than 30 days after the last day of each calendar month, the exact location of all property covered and the total actual cash value of such property at each location as of the last day of each calendar month. At the time of any loss, if the insured has failed to file with the Company reports of values as above required, this policy subject otherwise to all its terms and conditions, shall cover only at the locations and for not more than the amounts included in the last report of values filed prior to the loss, and further, if such delinquent report is the first report of values herein required to be filed, liability shall be limited to 90% of the amount for which the Company would otherwise be liable. If the inception date of this policy is the last day of the calendar month, then the first report of values due shall show the total actual cash values as of that date.
C. Full Reporting Clause:
Liability under this policy shall not in any case exceed that *482 proportion of any loss hereunder which the last value reported prior to the loss, at the location where the loss occurs, bears to the total actual cash value at that on the date for which such report was made. Liability for loss hereunder occurring at any location acquired since filing the last report (except as provided by the Value Reporting Clause) shall be apportioned in a like manner, except that the proportion used shall be the relation that the values reported prior to the loss at all locations bear to the total actual cash values at all locations on the date for which such report was made. [Emphasis supplied]
Watchung asserts that the filing of the June report was timely since it was within the 30-day grace period prescribed by the value-reporting clause and requires adjustment of the loss to the amount of $100,000. It does not argue that a value reporting clause violates any statutory provision or public policy. All the terms and conditions of the policy are spelled out, including a listing of the maximum limits of insurance. See N.J.S.A. 17:36-5.15 to 5.27, and particularly N.J.S.A. 17:36-5.18. In addition the value-reporting provision seems consistent with the statutory provision that "Every fire insurance policy shall insure, limited to the amounts of insurance specified therein, the named insured and legal representatives, to the extent of the actual cash value of the property at the time of the loss * * *." N.J.S.A. 17:36-5.19 (emphasis supplied). Aetna argues that the value-reporting provision is clear and unambiguous, and requires an interpretation that Aetna's liability is limited to the values set forth in Watchung's April 1977 report.
It is undisputed that the June report was filed on July 13, 1977. Watchung argues that the June inventory report was not due until July 30, 1977. Thus, the occurrence of the fire prior to the filing date is of no significance, in the view of Watchung, because of the so-called 30-day grace period. Support for this position is found in Sack v. Glen Falls Ins. Co., 356 Pa. 487, 52 A.2d 173 (1947). In Sack the Supreme Court of Pennsylvania held that a report filed after a loss but within the 30-day grace period could be used in determining the insured's liability for the loss. However, the *483 underlying rationale was the absence of the phrase, "last reported value filed prior to the loss," from the full reporting clause of the policy. The Supreme Court concluded:
The court below held that "the last reported value" in Section 11 refers to the last report filed before the loss occurred. With this interpretation of the policy we cannot agree. If the parties had intended that Section 11 of the policy should mean last reported value filed prior to the loss, they would have so stated. * * * If this court would read into Section 11 the phrase "filed prior to the loss," as the court below has erroneously done, it would destroy the clear meaning of the contract and nullify the time limit of thirty days specifically agreed upon by the parties. [52 A.2d at 175]
In the Aetna policy the two quoted clauses do contain specific language limiting the insurer's liability to the last reported value "filed prior to the loss." In any event, the full reporting clause is not applicable here because there was no prior understatement of inventory. In Sack that clause was involved because the insured sought to reform its last report or value for a mistaken figure to the actual value. This court is only concerned with the value reporting clause. Hence, Sack is distinguishable on its facts and on the policy language.
There are analogous cases dealing with delinquent monthly reports, from other jurisdictions which have some value as precedent. With both facts and value-reporting policy language remarkably similar to that contained in the Aetna policy, the Fifth Circuit Court of Appeals rejected an insured's contention of timeliness. Camilla Feed Mills, Inc. v. St. Paul Fire & Marine Ins. Co., supra, 177 F.2d at 748. That value-reporting clause, which provided for a 30-day grace period, read in pertinent part:
* * * At the time of any loss, if the Insured has failed to file with this Company reports of values as above required, this policy, subject otherwise to all its terms and conditions, shall cover only at the locations and for not more than the amounts included in the last report of values filed prior to the loss.
*484 Factually, the cases are identical in that a current report was filed by the insured within 30 days following the end of the prior month but after the fire loss. In both instances the report filed after the loss increased the value of inventory destroyed over the last previously reported inventory value and thus increased the exposure of the insurer if such report was timely filed.
In Camilla Feed the insured argued that the policy permitted reports to be filed within 30 days of the last day of the calendar month and that the insurer must accept their post-loss report since it was within that 30-day period. To this proposition the Court responded:
* * * This contention conflicts with the express provision of the policy which provides that in case of loss the company's liability shall be governed by the last report filed prior to the loss. ... Likewise, we conclude that in this case the period of grace for the filing of reports of values does not extend to any time after the fire loss, even though the thirty-day grace preiod has not expired. [177 F.2d at 749; emphasis supplied]
In Commonwealth Ins. Co. of N.Y. v. O. Henry Tent & Awn. Co., 287 F.2d 316 (7 Cir.), cert. den. 368 U.S. 826, 82 S.Ct. 45, 7 L.Ed.2d 30 (1961), the court, in discussing a value-reporting clause almost identical to the one in this case, followed the holding of Camilla Feed when it stated:
Under the clear and unambiguous terms of the Value Reporting Clause, the consequence of non-compliance with the monthly reporting condition through tardy filing is a limitation on the coverage afforded in the amount of the last value reported prior to the loss. [at 319; emphasis supplied]
In Wallace v. World Fire & Marine Ins. Co., 70 F. Supp. 193 (S.D. Calif. 1947), aff'd per curiam, 166 F.2d 571 (9 Cir.1948), a like conclusion was reached:
* * * By no stretch of the imagination can the February report be brought within the terms of the phrase "the last report of values filed prior to the loss." It was filed after the loss. The only report *485 of values filed prior to the loss was filed on January 3, 1946. [at 197]
Relying on Camilla Feed, Commonwealth and Wallace, the Florida District Court of Appeals considered the validity of a value report filed after the loss. In Six L's Packing Co. v. Florida Farm Bureau Mut. Ins. Co., 268 So.2d 560 (1972), aff'd 276 So.2d 37 (Sup. Ct. 1973), it was stated:
With respect to the plaintiff's contention that its monthly report filed on October 28, 1967, was within the grace period, it is our view that this contention is without merit and has been rejected by other courts considering similar contentions in analogous fact circumstances. It is to be observed that Clause [the value reporting provision] gives the insured 30 days after the last day of each calendar month within which to report its values. The plaintiff argues, in effect, that since its September report was not due until October 30, i.e., 30 days after the end of the (September) calendar month, the report filed on October 28, even though filed after the fire occurred (October 18), was nevertheless filed within 30-day grace period....
Obviously, if plaintiff's argument is correct then the insurer's liability would be determined by the October 28 report instead of the "last report filed prior to the loss" which was in June 1967 showing a value of "none". The cases which have held contrary to plaintiff's position are [cases omitted]. The aforementioned decisions dealt with value reporting clauses which contained the proviso that limited the insurer's liability in the case of delinquent reports to the amounts included in the last report of values "filed prior to the loss". * * *
In the case sub judice clauses 11 and 12 contain the specific language limiting insurer's liability to the last report value filed prior to the loss. The language of the clause is clear and unambiguous and clearly controls the insurer's liability. The report filed on October 28 was untimely and the insurer was justified in rejecting that report and relying upon the June 1967 report which was filed prior to the loss. [at 565; emphasis that of the court]
Except for Sack, every court which has considered the interrelationship between the 30-day grace period and limitation of an insurer's liability to the last value report filed prior to the loss has concluded the latter controls. See also, Reilly-Benton Co. v. Liberty Mut. Ins. Corp., 260 So.2d 797 *486 (La. Ct. App. 1972), aff'd 278 So.2d 24 (La. Sup. Ct. 1973); Moultrie International, Inc. v. Universal Underwriters Ins. Co., 545 F.2d 543 (5 Cir.1977), reh. en banc den. 549 F. 2d 203 (5 Cir.1977); Alaska Foods, Inc. v. American Mfg's. Mut. Ins. Co., 482 P.2d 842 (Sup. Ct. 1971). To hold otherwise would subject insurers to the potential of fraudulent claims by insureds who deliberately withhold value reports until after the time of the loss. The purpose of value reporting is to benefit the insured by molding its coverage to its specific monthly needs and limiting its premium payment based upon the average monthly inventory. The purpose of the 30-day grace period is to allow the insured a reasonable time to inventory its stock and to allow the insurer to audit the insured's stock at a time when verification is a relatively simple task. It is not intended to clash with the loss limitation sentence which follows. They serve different purposes. Allowing the filing of a report after a loss would permit the insured to enjoy the lowest possible premium by regularly understating value and then defraud the insurer after a loss by submitting an inflated report at a time when verification of earlier values is difficult, if not impossible. The decisional authorities cited by Aetna are persuasive.
The Aetna-Watchung value-reporting clause is clear and unambiguous. The court is compelled to construct this policy provision to bar as untimely a value report filed after the loss occurs. The second sentence constitutes a separate and superseding policy provision. Enforcement of this policy language is not to subject the insured to a hidden pitfall. The coverage Watchung received was what they should have reasonably anticipated, but no greater.
Even were the second sentence not controlling, the clear and unambiguous language of the policy disentitles Watchung from the benefit of the 30-day grace period. The crucial language of paragraph B reads:
At the time of any loss, if the insured has failed to file with the company reports of values as above required * * *. *487 The phrase "as above required" refers to the 30-day provision of the preceding sentence. As of July 1, 1977 Watchung was undisputably late in filing its May report. The May report was not filed until six days after the loss. Accordingly, as of the loss on July 7, 1977, Watchung's delinquency respecting the filing of the May report makes irrelevant the filing of the June report before July 30, i.e., within the 30-day grace period. Simple contractual interpretation of clear and unambiguous policy language bars the relief Watchung seeks.
It is not unreasonable for an insurer to impose upon the insured in a policy provision the consequences of its own failure to report timely its own inventory values. Application of this provision does not arbitrarily prevent the insured from recovering the full amount of its loss, up to the policy maximum. The policy simply makes the insured a coinsurer when it fails to file its value reports in a timely fashion. Thus, policy language explicitly provided for the contingency which occurred, and defined the financial relations of the parties in that event. Those rights and duties became static when the loss happened on July 7, 1977. An insured who does not want to run this risk need not buy value reporting insurance.
Accordingly, Aetna was justified in rejecting the untimely report and in making adjustment under the loss limitation language of the policy. Watchung's motion for summary judgment is denied.
Factual issues concerning the conduct of the insurance agent and Aetna respecting the late filings have been raised in the pleadings and affidavits. The doctrines of equitable estoppel and waiver as affecting coverage will be resolved at trial. Cf. Harr v. Allstate Ins. Co., 99 N.J. Super. 90 (App. Div. 1968); and see Columbia Fire Ins. Co. v. Boykin & Tayloe, Inc., 185 F. 2d 771 (4 Cir.1950); Schenley Distillers Corp. v. United States Fire Ins. Co., 90 F.2d 633 (2 Cir.1937).
NOTES
[1] This opinion is submitted under R. 2:5-1(b) to amplify an oral decision. It has been learned that plaintiff has appealed from the dismissal of its complaint after a trial before another judge on the merits. Although it is not suggested that notice of appeal be given to other than the trial judge, the within opinion limited the issues tried.