**QUALITY FOODS, INC.,**
**Plaintiff-Appellee,**

v.

**U.S. FIRE INSURANCE COMPANY, et al., Defendants-Appellants.**

No. 81–8036.

United States Court of Appeals,
Eleventh Circuit.

Sept. 19, 1983.

---

**8.** Fee requests should, of course, be made in accordance with local court rules explicitly governing such requests.

G. Hamp Uzzelle, III, Mobile, Ala., for defendants-appellants.

James D. Brooks, Carl Robert Gottlieb, Jr., Mobile, Ala., for plaintiff-appellee.

Before TJOFLAT, HILL, and JOHNSON, Circuit Judges.

JAMES C. HILL, Circuit Judge:

## PRIOR PROCEEDINGS

Plaintiff, Appellee, Quality Foods, Inc. [hereinafter Quality] filed suit against U.S. Fire Insurance Company [hereinafter U.S. Fire] in the circuit court of Mobile County, Alabama. Appellee sought recovery, under an insurance policy issued by U.S. Fire to Quality, in the amount of three million dollars compensatory and property damages and two million dollars in punitive damages. Appellant removed the action to federal district court pursuant to 28 U.S.C.A. §§ 1332 and 1441. The jury found for Quality in the amount of $50,000.00 building damages and $250,000.00 contents damages. U.S. Fire subsequently filed this appeal assigning error to the judgment of $250,000 contents damages.

## FACTS

Quality is primarily engaged in the food business and has been incorporated since 1962. Soon after its incorporation, Quality engaged the services of King Pickett as their insurance agent. Mr. Pickett is an independent insurance agent who places insurance with numerous insurers based upon the "best deal" he can acquire for his clients. Mr. Pickett arranged for U.S. Fire to insure Quality.

The type of insurance policy Quality acquired to cover its loss or damage to its contents was known as reporting form insurance. This type of insurance allows the insured to pay premiums based on its monthly reports of the present amount of inventory. The monthly premium fluctuates depending on the amount of inventory for the current month. Thus, reporting form insurance allows an insured who has a fluctuating inventory to obtain full coverage for the fluctuating inventory (up to a stated limit not here involved) and yet pay premiums on only the average of the inventory values. However, this type of policy requires accurate submissions by the insured of the current inventory values to the insurer. The insured must file its inventory reports within 30 days after the end of each month. The policy also contains a Full Reporting Clause which protects the insurer, limiting recovery by adjusting coverage according to the accuracy of the last inventory report filed prior to loss or damage by the insured. The policy's Full Reporting Clause reads:

C. *Full Reporting Clause.* As respects [contents], liability under this policy shall not in any case exceed that proportion of

any loss hereunder which the last value reported prior to the loss . . . bears to the total actual cash value . . . on the date for which such report was made . . . .

During the month of September 1979, Hurricane Frederick struck the coast of Alabama and caused severe damage to the buildings and contents of Quality. The last inventory report filed by Quality, prior to the losses it sustained due to the hurricane was submitted on July 31, 1979. The inventory value reported by Quality was $990,000.00. Yet, the total value of Quality's contents as of July 31, 1979, was actually $2,299,592.57. Based on the full reporting clause, U.S. Fire divided the $1,000,000.00 [1] reported value by the actual value of $2,299,592.57 to arrive at a proportionate coverage of 43.4% of the damages sustained by Quality.

U.S. Fire, acting through Mr. George Kerr, an adjuster from the General Adjustment Bureau, agreed with Quality, that the contents damage to Quality by windstorm was in the amount of $247,164.69. U.S. Fire, based on the Full Reporting Clause offered to pay Quality 43.4% of the $247,164.69, or $107,269.48. Mr. Dominic Ficarino, president of Quality refused to accept anything below $247,164.69.

Quality refused to accept the 43.4% calculation of recovery, asserting that U.S. Fire had waived its Full Reporting Clause. Quality had submitted an inventory report for the month of August, 1979, although this report was not filed with U.S. Fire until October, 1979, due to the damages caused by the hurricane. Quality asserts that throughout its years of coverage, it had frequently filed its monthly reports late and U.S. Fire never protested or repudiated coverage because of the untimely filings. The August report, filed in October reflected a total inventory value of $2,529,554.00, a noticeable jump from the $990,000.00 total inventory reported in July. The reason for the jump in the post-loss report was it covered all contents and not

just value of frozen seafood inventory theretofore used.

Quality had claimed approximately $400,000.00 worth of contents damage. Although Mr. Ficarino had tentatively agreed to the total loss appraisal of $247,164.69, he did so believing he would be paid this full amount. Because Quality would not accept the 43.4% of the $247,164.69 and U.S. Fire refused to compensate Quality beyond the calculated percentage rate, this suit commenced.

### I. Recovery under the Full Reporting Clause

Quality asserts that U.S. Fire waived the terms in the Full Reporting Clause which limited recovery to 43.4% of the claimed damages. This assertion is based on U.S. Fire's failure to protest or complain about Quality's history of untimely reporting. Additionally, Quality asserts that any underreporting of the inventory was due to Mr. Pickett.

The controlling case in this circuit on full reporting clauses, such as the one in dispute in the present case, is *Camilla Feed Mills, Inc. v. St. Paul Fire & Marine Ins. Co.*, 177 F.2d 746 (5th Cir.1949). In *Camilla*, the insured sued the insurance company for a fire loss based on the same type of clause that exists in the present case. A judgment was entered for the insurance company and the fifth circuit affirmed. The insured had estimated the value of its inventory at $3,000.00 when in fact, the inventory was $9,000.00. After the fire took place, the insured amended its last report to reflect actual inventory rather than estimated inventory. The insured also filed its next monthly report showing actual inventory. This report was filed within the 30 day grace period given for each month, yet after the fire had destroyed the property. The insured argued that because it had filed within the grace period, the last inventory report showing a $9,000.00 value should have been accepted rather than the previous report reflecting a $3,000.00 value.

---

1. For ease of calculating, U.S. Fire voluntarily changed the $990,000.00 inventory claim of Quality to $1,000,000.00.

The court stated that what the insured was really asking was for the court to reform the contract and the evidence, thereby relieving the insured of its own mistake. The court refused to reform the contract because the mistake was unilateral. The insured had not made any effort to accurately determine the value of its own inventory. The court further held the reporting clause clearly provides that liability is limited to the last report filed *prior* to the loss. *Id.* at 749; *see Moultrie International, Inc. v. Universal Underwriters Insurance Co.,* 545 F.2d 543, 546 (5th Cir.1977).

■ The facts in the present case are analogous to those in *Camilla.* Quality underreported the value of its inventory. However, Quality maintains that the blame for this underreporting lies with Mr. Pickett. Quality misses an important step in its analysis that the fault for underreporting lies with Mr. Pickett. Quality forgets to examine the language of the policy, which was totally *unambiguous.* This was not a unique policy, or a difficult policy to understand. The policy clearly required Quality to report on a monthly basis, within a specified period of time, the *total amount* of its inventory. Quality chose to ignore this requirement. The policy provided in clear and unambiguous terms what was to be reported. It was the duty of Quality to see to accurate reporting or expose itself to limited coverage. Quality failed to report its inventory accurately, and pursuant to the policy, coverage is limited by its report.

■ A person who executes a written document in ignorance of its contents cannot plead ignorance in order to avoid the effect of the document. *Commercial Contractors, Inc. v. United States Fidelity & Guaranty Co.,* 524 F.2d 944, 947 (5th Cir. 1975); *Century Plaza v. Hibbett Sporting Goods, Inc.,* 382 So.2d 7, 8–9 (Ala.1980). We uphold the Full Reporting clause and we direct the trial court to enforce this clause,

thereby reducing Quality's recovery to 43.4% of the sustained contents damages.

## II. Damages

■ The jury returned a verdict in favor of Quality in the amount of $250,000.00 for contents damages. Appellant, U.S. Fire, contends that this verdict was excessive and not supported by substantial evidence. This court has previously held that the amount of damages awarded by a jury is to be left to the discretion of the jury. *Lowe v. General Motors Corp.,* 624 F.2d 1373 (5th Cir.1980), *Cental Telephone Co. v. Cornish,* 291 Ala. 293, 280 So.2d 541 (1973). Under Alabama law,[2] a jury verdict will not be set aside unless it is found to be so excessive as to demonstrate bias, passion, prejudice, corruption or other improper motive or cause. *Id.* at 1383; *see also Evers v. Equifax, Inc.,* 650 F.2d 793 (5th Cir.1981).

■ At trial, Quality submitted a claim of $181,952.89 for supply damage. U.S. Fire and Quality had previously agreed that there was $145,000.00 damage done to supplies. Mr. Ficarino insisted that the supply claim was worth the original $181,952.89. U.S. Fire argues that the extra $36,952.89 was not supported by substantial evidence. We agree. Having carefully reviewed the record, we cannot find any evidence to support Quality's claim of the additional $36,952.89. Mr. Ficarino testified that he did not recall what specific damage the $181,952.89 applied to, but that he was sure there was an exhibit demonstrating the breakdown. The only exhibit this court has found relating to this claim shows that Quality claimed $136,614.00 worth of supply damages due to windstorm. This figure is $8,386.00 less than what was agreed to by U.S. Fire and Quality.

U.S. Fire argues that numerous other damages claimed by Quality were not supported by substantial evidence. We disagree. Quality presented sufficient evidence on their claimed damages to support the

---

**2.** The determination of whether a jury verdict is excessive in a diversity case is left to the state substantive law. However, the federal law will determine whether a new trial should be granted due to a jury verdict of excessive damages. *Lowe,* 624 F.2d at 1383; *see* 11 Wright & Miller § 2802 (1973).

remainder of the jury verdict. We cannot over emphasize the great weight and deference which must be given to jury verdicts.

The jury's verdict was in the amount of $250,000. After reviewing the record we concluded that $36,052.89 [3] of damages were not supported by substantial evidence. Thus, the verdict is reduced to $213,947.11. The total amount of recovery at this point is $213,947.11 plus the $107,269.48, already paid by U.S. Fire, which equals $321,216.59. The Full Reporting Clause, requires that we apply the 43.4% limitation to the total recovery of $321,216.59 thereby reducing the judgment to $138,608. U.S. Fire has paid $107,269.48 leaving an unpaid balance of $31,348.52. The case is REMANDED for entry of judgment in that amount.

**3.** This court has the authority to reduce a judgment. *See* 6A *Moore's Federal Practice* ¶ 59.-05[3] at 59–61 & 59–62 and nn. 37–39 (2d ed. rev. 1979); *see also St. Paul Fire & Marine Ins. Co. v. Gaza County Warehouse & Marketing Ass'n,* 93 F.2d 590 (5th Cir.1938).