This is an appeal from a summary judgment in favor of the defendants, United States Fidelity and Guaranty Company ("USF G") and Garner, Meshad, and Wood Agency, Inc. ("GMWA"). We affirm.
The plaintiff, Southern Sash Sales and Supply Company ("Southern Sash"), operates a building supply business in six cities. Southern Sash of Columbia is a division of Southern Sash, which has its corporate headquarters in Colbert County. In 1985, Southern Sash contacted GMWA for the purpose of replacing the property insurance that was then in force covering its businesses. Southern Sash provided GMWA with a copy of the policy then in force, which GMWA submitted to USF G. On August 19, 1985, USF G insured Southern Sash under a special multi-peril policy of insurance. The policy insured Southern Sash against all direct losses to buildings, contents, and inventory caused by fire.
On June 14, 1986, a fire severely damaged the buildings, contents, and inventory of Southern Sash of Columbia. USF G and Southern Sash settled the building losses, but failed to agree on the amount to which Southern Sash was entitled for its inventory losses. As a consequence, Southern Sash filed suit against USF G and GMWA for breach of contract.
The contract provisions here in dispute read as follows:
 "Value Reporting Clause: The insured shall report in writing to the Company, not later than 30 days after the last day of each calendar month, the exact location of all property covered and the total actual cash value of such property at each location as of the last day of each calendar month. At the time of any losses, if the insured has failed to file with the Company reports of values as above required, this policy, subject otherwise to all its terms and conditions, shall cover only at the locations and for not more than the amounts included in the last report of values filed prior to the loss. . . .
 "Full Reporting Clause: Liability under this policy shall not in any case exceed that proportion of any loss hereunder which the last value reported prior to the loss, at the location where the loss occurs, bears to the total actual cash value at that location on the date for which such report was made. . . ."
The last report of values filed prior to the fire indicated that the Columbia store had inventory of $809,625.00. The actual inventory on hand at that time, however, was $1,095,132.40. Applying these provisions of the contract of insurance, the trial court entered judgment for 74% of the claimed loss. Southern Sash appeals, *Page 1390 
claiming that it is due the entire amount of the loss.
Southern Sash argues that these provisions are inconsistent with the "Supplemental Declarations Endorsement" contained within the policy, which appears to designate its coverage as blanket coverage. Southern Sash readily admits that these provisions are not ambiguous on their face, and become ambiguous only when read in conjunction with the "Supplemental Declarations Endorsement." That provision reads in part as follows:
"SUPPLEMENTAL DECLARATIONS ENDORSEMENT
 "Designation of premises, as stated in the Declarations, is extended to include the following and insurance is provided with respect to those premises described below and with respect to those coverages and kinds of property for which a specific limit of liability is shown, subject to all the terms of this policy including forms and endorsements made a part hereof:
"DESIGNATED PREMISES
 "BLANKET COVERAGE AS PER STATEMENT OF VALUES ON FILE WITH COMPANY
 "BLANKET STOCK REPORTING AS PER STATEMENT OF VALUES ON FILE WITH COMPANY"
We find no inconsistency between these provisions, and no ambiguity within this policy, when the policy is viewed in its entirety. The language of the Supplemental Declarations Endorsement does not act a subversion upon the clear meaning of the policy as a whole. The value reporting clause has become a standard clause in policies of insurance covering businesses, and courts have been called upon in the past to interpret provisions virtually identical to the ones here contested. The value reporting clause in these policies is often referred to as the "honesty clause." Judge Edwin R. Holmes, writing for the United States Court of Appeals for the Fifth Circuit, in possibly the most often cited case dealing with the clause, explained it in the following way:
 "Appellant wants to be relieved of a mistake resulting from poor judgment on its part; it does not claim that there was any mistake in the terms of the policy or contract between the parties. The mistake sought to be corrected was due solely to appellant's poor estimate. This was an error of judgment, not a mistake of fact. It was not a mutual mistake; the appellee had nothing to do with the making of it; and no fraud or illegal conduct may be imputed to the latter . . . .
 Appellant had within its power the method of determining just exactly the true amount of this inventory, but it did not choose to avail itself of the same. No effort was made accurately to determine the true inventory, but it simply chose to estimate the value. . . . When the appellant chose to estimate rather than calculate the amount of the inventory, its mistake was made. By so doing it assumed the risk of the estimate being wrong; and, since there was a loss, the amount of its recovery is governed by the provisions of the value reporting clause of the policy."
Camilla Feed Mills, Inc. v. St. Paul Fire Marine Ins.Co., 177 F.2d 746, 749 (5th Cir. 1949).
 "From such a method of computing the premium, it can easily be recognized that the insured, in order to save premiums, might not correctly report the true value of his inventory. During the term of a policy, an insured could mistakenly underestimate the amount of his inventory and, if there were no loss, pay a premium based on such underestimated amounts; and if, during the term of the policy, a loss occurred, he could simply ask the court to correct the erroneous estimate that had been made. In this way, according to appellant's contentions, an insured could easily escape the payment of the correct amount of premiums where there was no loss; and, in the event of a loss, he could collect the full amount of his policy by offering to pay an additional amount of premium. In order to offset this advantage to the insured, the policy *Page 1391 
contains a provision to the effect that the liability of the insurer shall not exceed that portion of any loss sustained which the last reported value, filed prior to the loss, bears to the actual value of the inventory on the date for which the report was made."
177 F.2d 746, 748 (5th Cir. 1949); see, also, Annot., 13 A.L.R.2d 713 (1950); Quality Foods, Inc. v. United StatesFire Ins. Co., 715 F.2d 539 (11th Cir. 1983); RonHenry Ford, Lincoln, Mercury, Inc. v. Nat. Union Fire Ins.Co., 8 Kan. App. 2d 766, 667 P.2d 907 (1983); WatchungPool Supplies v. Aetna Cas. Sur. Co., 169 N.J. Super. 474,404 A.2d 1281 (1979); Six L's Packing Co. v. Florida FarmBur. Mut. Ins. Co., 268 So.2d 560 (Fla.Dist.Ct.App. 1972).
We reach the same conclusion as did these courts and as did the trial court. It is apparent from the insured's witness, who was experienced and knowledgeable in the field of insurance, that she knew that inventory reports were required and that she knew that the premiums were calculated with reference to such reports. She acknowledged that the reports were not timely filed as required by the policy.
The trial court found that this witness, the insured's agent, "was aware of and understood the said reporting clause and the consequences of said clause, understood the terms of the policy and knew that Plaintiff [insured] was not in compliance with said terms."
Southern Sash also argues that because it was consistently late in filing its inventory reports with USF G, without any objection from the insurer, that USF G should be held to have waived the filing requirements and should be estopped from relying upon those reports. It argues that at the very least the undisputed facts present a scintilla of evidence as to the question of waiver and estoppel.
Indeed, the undisputed facts clearly show that Southern Sash was consistently late in filing its inventory reports with USF G. Equally clear from the depositions presented to the trial court is the fact that Southern Sash was aware that it was not in compliance with the reporting provisions of the contract. In fact, Southern Sash had an officer whose duty it was to assure compliance with the terms of the contract. USF G supplied Southern Sash with the policy that had been requested.
Southern Sash contends that under these facts USF G has waived the reporting provisions of the policy or should be estopped to raise the issue. This argument has also been made and rejected in other jurisdictions in similar cases.
Commonwealth Insurance Co. v. O. Henry Tent AwningCo. (cert. den.), 287 F.2d 316 (7th Cir. 1961), involved a policy of insurance that was identical to the present policy. Inventory was insured at various locations and, when a fire occurred on March 28, 1956, reference to the last report of values, filed before the fire, showed that the insured reported $14,360.76. In fact, the actual inventory present at the time of that report was more than $32,000.00. After the fire, the insured attempted, on April 27, 1956, to report the actual value of the inventory, contending that it had 30 days from the end of March to file reports of values. In the belated report of values, a full disclosure of inventory value was made.
The insured in that case, as here, attempted to avoid application of the "honesty" clause by contending that the insurance agent was responsible for submitting reports of values; that the insurer had never insisted upon reports of values; and that the insurer had waived its right to enforce the policy provision by accepting frequently tardy reports.
The Seventh Circuit Court of Appeals addressed the issue as follows:
 "The principal question on this appeal is whether under the law of Illinois the doctrine of waiver avails to excuse non-compliance with the Value Reporting Clause of a reporting form fire insurance policy.
 "Value reporting clauses, similar to that involved here, have been the subject of judicial construction in other jurisdictions. The device of monthly reporting serves the purpose of affording complete *Page 1392 
insurance coverage on a fluctuating stock of merchandise and of determining a premium directly proportionate to the risk declared by the insured. This is a condition of benefit to the insured. Peters v. Great American Ins. Co., 4 Cir., 1949, 177 F.2d 773; Camilla Feed Mills, Inc. v. St. Paul Fire Marine Ins. Co., 5 Cir., 1949, 177 F.2d 746; 13 A.L.R.2d 705; Columbia Fire Ins. Co. v. Boykin Tayloe, Inc., 4 Cir., 1950, 185 F.2d 771.
 "Under the clear and unambiguous terms of the Value Reporting Clause, the consequence of noncompliance with the monthly reporting condition through tardy filing is a limitation on the coverage afforded in the amount of the last value reported prior to the loss. Noncompliance does not result in avoidance or cancellation of the policy. The condition is one going to coverage and not one of forfeiture of rights in respect to a defined risk. Peters v. Great American Ins. Co., supra; Columbia Fire Ins. Co. v. Boykin Tayloe, Inc., supra."
287 F.2d 316, 319 (7th Cir. 1961). (Emphasis added.)
We agree with the trial court's conclusion that the policy provision under consideration is absolutely unambiguous, and that the doctrine of waiver is not applicable. The judgment of the trial court is affirmed.
AFFIRMED.
JONES, ADAMS and STEAGALL, JJ., concur.
HOUSTON, J., concurs in the result.
 *Page 336