64 F.3d 657
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Michael Christopher LAUBACH, Infant, by his parent and next
friends, Susan A. Laubach and Roger P. Laubach;
Susan A. Laubach, Individually; Roger
P. Laubach, Individually,
Plaintiffs-Appellants,
v.
Mohammed A. KHAJAWAI, M.D., Defendant-Appellee,
and
Craig R. Hall, M.D.; Victoria M. McDonald, M.D.; Franklin
Square Hospital Center, Incorporated, A Body
Corporate, Defendants.
 No. 94-2421.
 United States Court of Appeals, Fourth Circuit.
 Argued July 10, 1995.
Decided Aug. 29, 1995.
 
 ARGUED: Marvin Ellin, ELLIN & BAKER, Baltimore, MD, for Appellants. Shelley Lynne Bagoly, JACOBSON, MAYNARD, TUSCHMAN & KALUR, Columbia, MD, for Appellee. ON BRIEF: LaVonna L. Vice, ELLIN & BAKER, Baltimore, MD, for Appellants. Andrew Buckner, JACOBSON, MAYNARD, TUSCHMAN & KALUR, Columbia, MD, for Appellee.
 Before WILKINS and WILLIAMS, Circuit Judges, and JOSEPH F. ANDERSON, JR., United States District Judge for the District of South Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 The Appellants, Michael Christopher Laubach, Susan A. Laubach, and Roger P. Laubach, received a jury verdict of $175,000 after a medical malpractice trial in the United States District Court for the District of Maryland. In response to special interrogatories on the verdict form, the jury apportioned the damages as $80,000 for future medical expenses, $95,000 for loss of future earnings, and $0.00 for non-economic damages. Thereafter, the Appellants moved for a new trial on damages only, claiming that the jury's verdict was illogical, inconsistent, and wholly inadequate. The trial court denied the motion for new trial, and this appeal followed. For the reasons set forth below, we affirm the district court's ruling.
 
 I.
 
 2
 On May 15, 1989, Susan Laubach was involved in a head-on collision with another vehicle on a one-lane bridge. At the time, Mrs. Laubach was twenty years old and thirty-three weeks pregnant. Although neither Mrs. Laubach nor the other driver appeared to be seriously injured, an ambulance was called, and Mrs. Laubach was taken to the Franklin Square Hospital.
 
 
 3
 A sonogram performed shortly after her arrival at the hospital indicated that Mrs. Laubach had suffered a partial placental abruption, an injury to the organ that provides nutrition to the fetus in utero. She was admitted to the hospital for monitoring and observation. After observing her in the hospital for a few days, her physicians determined on Friday morning, May 19, 1989, that she should be discharged on Saturday, May 20, 1989.
 
 
 4
 On the evening of May 19, 1989, at approximately 8:30 p.m., Mrs. Laubach experienced severe vaginal bleeding. Her physicians performed some tests on her and determined that she should undergo a Caesarean section. Mrs. Laubach's attending residents were Craig Hall, M.D. and Victoria McDonald, M.D., and the attending obstetrician was Appellee, Mohammed Khajawi, M.D.
 
 
 5
 After Mrs. Laubach was placed in the operating room, the physicians were informed that another emergency patient was being rushed to the operating room. The other patient was suffering from a frank hemorrhage and needed an immediate Caesarean section to save her life and her baby's life. Mrs. Laubach was advised that her operation would have to be postponed until the emergency patient's operation was completed. Mrs. Laubach was removed from the operating room and taken to a recovery room, where she and her baby were monitored. At approximately 11:00 p.m., she was returned to the operating room and the physicians delivered her baby, Michael Christopher Laubach, by Caesarean section.
 
 
 6
 Michael was born prematurely and had a brain injury that caused right hemiplegia, or paralysis of the right side of his body. His condition required that he spend the first two months of his life in the hospital. By the time he was two years old, Michael exhibited some motor impairment and mild cognitive disability as a result of his brain injury.
 
 
 7
 The Appellants brought this medical malpractice action against Dr. Khajawi alleging that Michael's injuries were caused by the negli gence of Dr. Khajawi in failing to promptly perform a Caesarean section on Mrs. Laubach.* The trial of this matter occurred on August 15, 1994 through August 24, 1994 and culminated in a jury verdict in favor of the Laubachs.
 
 
 8
 In special interrogatories submitted to the jury in the verdict form, the jury specifically found that Dr. Khajawi was negligent in treating Susan Laubach and that his negligence was a proximate cause of injury to Michael Laubach. Further, the jury awarded the Laubachs a total of $175,000 in damages: $80,000 for "[t]he medical expenses and related expenses reasonably probable to be incurred in the future"; $95,000 for "[t]he loss of earnings which will be incurred in the future"; and $0.00 for "[t]he 'non-economic damages' (pain and suffering, anxiety)." J.A. at 470-71.
 
 
 9
 The Laubachs timely filed a motion for a new trial under Fed.R.Civ.P. 59(a). They urged the trial court to accept the jury's findings of negligence and proximate cause, but to order a new trial on damages only. The Laubachs argued that the jury's award of zero for noneconomic damages is inconsistent with the jury's finding of negligence and awarding of economic damages. In addition, the Laubachs argued that the jury failed to award damages for the injury itself that Michael sustained, that the evidence of non-economic damages was essentially uncontradicted, and that the verdict was so inadequate as to shock the conscience of the court.
 
 
 10
 The district court denied the motion for new trial because it determined that the question of the appropriate amount of damages was properly within the province of the jury. The district court concluded that the verdict was not grossly inadequate, that the verdict was not against the clear weight of the evidence, and that allowing the verdict to stand would not result in a miscarriage of justice.
 
 
 11
 The Laubachs appeal from the district court's ruling on their motion for new trial. In arguing on appeal that the district court erred, they raise essentially the same arguments that they presented in support of their motion.
 
 II.
 
 12
 We first address the appropriate standard of review for examining a trial court's ruling on a motion for new trial. The Appellee argues that this issue is one of substantive law and is therefore governed by the law of Maryland, the state in which the acts or omissions that gave rise to this diversity action occurred. According to the Appellee, under Leizear v. Butler, 172 A.2d 518 (Md.1961), and related cases, the general rule in Maryland is that a trial court's ruling on a motion for new trial because of excessiveness or inadequacy of the verdict is rarely, if ever, reviewed on appeal.
 
 
 13
 The court disagrees with the Appellee's argument that state law establishes the standard of review of a district court's ruling on a motion for new trial in a diversity case. As several circuits have recognized, the granting or denial of a new trial in a diversity action is a matter of procedure governed by federal law and not by state substantive law. See, e.g., Roggow v. Mineral Processing Corp., 894 F.2d 246, 249 (7th Cir.1990) (citing Wiedemann v. Galiano, 722 F.2d 335, 337 (7th Cir.1983)); Westbrook v. General Tire & Rubber Co., 754 F.2d 1233, 1238 (5th Cir.1985); Brown v. Royalty, 535 F.2d 1024, 1027 (8th Cir.1976); see also 11 Charles A. Wright et al., Federal Practice and Procedure Sec. 2802 (2d ed.1995). Some courts have held that whether damages awarded on state-law claims are excessive or inadequate is determined under state law, but that federal law governs the procedural issue of whether to grant a new trial on that basis. See, e.g., Quality Foods, Inc. v. U.S. Fire Ins. Co., 715 F.2d 539, 542 n. 2 (11th Cir.1983). However, a leading treatise on federal practice suggests that "a more acceptable view articulated by many courts is that although federal law controls on questions involving new trials, courts sitting in diversity may look to state decisions for general guidance." 11 Wright et al., supra, Sec. 2802, at 45. Accordingly, our review of the district court's ruling below is governed by the federal standard, not the Maryland standard, for new trial motions.
 
 
 14
 It is well-settled in this circuit that "[t]he granting or denying of a new trial, either for excessiveness or inadequateness of the verdict, is discretionary with the trial court and not reviewable absent an abuse of discretion." Wadsworth v. Clindon, 846 F.2d 265, 266 (4th Cir.1988); see also Bristol Steel & Iron Works, Inc. v. Bethlehem Steel Corp., 41 F.3d 182, 186 (4th Cir.1994); Wilhelm v. Blue Bell, Inc., 773 F.2d 1429, 1433 (4th Cir.1985), cert. denied, 475 U.S. 1016 (1986). Our review of the record and the district court's ruling below reveals that the district judge did not abuse his discretion in denying the Appellants' motion for a new trial on damages only.
 
 III.
 
 15
 Rule 59(a) of the Federal Rules of Civil Procedure provides, in relevant part:
 
 
 16
 A new trial may be granted to all or any of the parties and on all or part of the issues ... in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States....
 
 
 17
 As we have held before, and as the district court below correctly recognized, a trial judge may grant a new trial # 7F 797F# if he is of the opinion that the verdict is against the clear weight of the evidence, or is based upon evidence which is false or will result in a miscarriage of justice." ' " Metrix Warehouse, Inc. v. Daimler-Benz Aktiengesellschaft, 828 F.2d 1033, 1043 (4th Cir.1987) (quoting Wyatt v. Interstate & Ocean Transport Co., 623 F.2d 888, 892 (4th Cir.1980) (quoting Williams v. Nichols, 266 F.2d 389, 392 (4th Cir.1959))), cert. denied, 486 U.S. 1017 (1988).
 
 
 18
 The Appellants argue that the jury's verdict is inadequate as a matter of law because, they contend, the evidence of Michael's disability, as well as evidence that Michael would suffer from physical limitations and psychological difficulties in the future, was essentially uncontroverted. In other words, the Appellants argue that the evidence of non-economic damages was undisputed by Dr. Khajawi's witnesses.
 
 
 19
 In rejecting this argument, the district court made the following determination:
 
 
 20
 [W]hether or not portions of the testimony of plaintiffs' experts was disputed by contrary evidence, the jury was not compelled to accept in toto the testimony of plaintiffs' expert witnesses. Even though the testimony of a particular witness was not disputed, the jury was entitled to give the testimony of any witness such credibility, if any, as the jury determined that it deserved.
 
 
 21
 J.A. at 503-04.
 
 
 22
 Moreover, the Appellee has identified several portions of the record in which the bases for the Laubach's experts' testimony on non-economic damages were challenged or the credibility of the Laubach's witnesses was attacked. For example, during the testimony of the Plaintiffs' neurology expert, Dr. Richardson, Michael was brought before the jury box to help demonstrate the witness's testimony about Michael's disability. Dr. Richardson testified that "[Michael] is unable to dress himself, and he is unable to put his shoes on. He has to be assisted in this act every morning. A five-year-old should be able to put some of his things on, not necessarily tie his shoelaces, but he should be able to do some things." At that point, Michael interrupted by blurting out, "I can put my shorts on by myself." J.A. at 178. In addition, the testimony of the Defendant's expert, Dr. Antell, indicated that there was no consensus about Michael's abilities and the outlook for his future.
 
 
 23
 After carefully considering the briefs and arguments of counsel on appeal, as well as the record below and the district court's order, we affirm the district court's denial of the Laubachs' motion for new trial. As the district court observed, "[the Laubachs'] post-trial motion is based essentially on their disagreement with the jury's ultimate findings on the facts. However, determinations on the amount of damages to be awarded in this case were for the jury to make pursuant to the Court's instructions." J.A. at 501. Because the district court was in the best position to examine the appropriateness of the jury's decision in light of the evidence presented in the case, its discretion is entitled to considerable deference. We find no abuse of that discretion here.
 
 AFFIRMED
 
 
 *
 The Laubachs also named as defendants Drs. Hall and McDonald and Franklin Square Hospital. Prior to trial, the Laubachs reached a settlement with Defendants Hall and Franklin Square Hospital. In addition, Defendant McDonald was dismissed on summary judgment